UNITED STATES of America, Plaintiff-Appellee,

v.

Anthony John DeVITA, Jr., Defendant-Appellant.

No. 75–2100.

United States Court of Appeals, Ninth Circuit.

Nov. 20, 1975.

Bruce Castetter, Asst. U.S. Atty. (argued), San Diego, Cal., for defendant-appellant.

J. Kenneth Jensen (argued), La Jolla, Cal., for plaintiff-appellee.

OPINION ON PETITION FOR REHEARING

Before ELY and WRIGHT, Circuit Judges, and EAST,* District Judge.

* Honorable William G. East, Senior United States District Judge of the District of Oregon, sitting by designation.

PER CURIAM:

Appellant's petition for rehearing is granted and our prior decision is withdrawn.

This was a conviction for marijuana possession with intent to distribute [21 U.S.C. § 841(a)(1)] and for conspiracy to possess with such intent [21 U.S.C. § 846]. Was there founded suspicion to justify the stop of DeVita's vehicle? The district court thought so and denied a motion to suppress. In this, we conclude that it erred because the officers who stopped DeVita's car did not have sufficient facts to warrant the stop.

Early in 1974 an agent of the Drug Enforcement Administration (DEA) learned from a previously untested informant that appellant was moving contraband from San Diego to Pittsburgh, Pennsylvania. Periodic surveillance followed for five months at DeVita's San Diego residence. Nothing unusual was observed. Late in June, the same informant told the officer that "a Mr. DeVita would be transporting some type of narcotics, possibly to the Pittsburgh area, some time in the near future."

Responding to this tip, surveillance was resumed at DeVita's home and at that of Rattiner, believed to be an associate. The surveillants followed Rattiner, his wife and one Cibrone of Pine Bank, Pennsylvania, to the San Diego airport. Rattiner and Cibrone rented an automobile, and Cibrone bought an airline ticket. The rented car was followed to Rattiner's home. The agents learned that the car was to be returned at the Pittsburgh office of the rental agency.

On the following morning, Rattiner drove Cibrone to the airport. Later DeVita and Rattiner drove in the rented car to several stores where they shopped for a car top carrier and collected cardboard boxes. DeVita and Rattiner drove to the home of Rattiner, and later to that of DeVita. At DeVita's home they were observed loading the car top carrier.

The same evening, DeVita, a woman and a child entered the car and headed north. A few miles up the highway they were stopped, and one officer approached with a gun. There had been no traffic violation. An agent approaching the stopped car smelled marijuana, the vehicle was searched, the contraband was discovered, and DeVita was arrested.

Recently the Supreme Court held in *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), that in "appropriate circumstances" the Fourth Amendment allows a brief detention "on facts that do not constitute probable cause to arrest or search . . . ." 422 U.S. at 881, 95 S.Ct. at 2580. The Court expressly limited "appropriate circumstances" to those supported by "reasonable suspicion," *i. e.,* only situations in which an officer is aware of specific articulable facts, together with rational inferences from those facts, that reasonably lead him to believe that criminal activity is afoot. *Id.* at 884, 95 S.Ct. at 2582. *Compare Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

In this case, the government relies heavily on the informant's tip and the five-month surveillance of appellant's activities in support of its founded suspicion contention. Clearly, information from an informant is material as a factor in determining whether founded suspicion is present. *Adams v. Williams, supra,* 407 U.S. at 147, 92 S.Ct. at 1924. But "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of the suspect would be authorized." *Id.*

The informant in this case was untested before January 1974. The DEA agent who received the January and June tips testified at the suppression hearing that he did not place any confidence in the informant, nor did he consider the information received particular-

ly reliable.[1] Furthermore, the fact that for five months the DEA suspected DeVita of criminal activity is entitled to no weight. *United States v. Martin,* 509 F.2d 1211, 1215 n. 3 (9th Cir. 1975), *citing Spinelli v. United States,* 393 U.S. 410, 414, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). Indeed, from the government's failure to produce a single item of evidence from the surveillance in support of founded suspicion, the only rational inference was that the informant was unreliable at the time he gave the second tip.

But the government argues that the substance of the unreliable informant's second tip, *i. e.,* "that a Mr. DeVita would be transporting some type of narcotics, possibly to the Pittsburgh area, sometime in the near future," supports founded suspicion. The government points to the subsequent corroborating activities of Messrs. DeVita, Rattiner and Cibrone as compelling this conclusion. We cannot agree.

The June tip is noticeably lacking in detail. Clearly distinguishable is the face-to-face, on-the-scene, detailed tip provided by a known, reliable informant in *Adams v. Williams, supra,* 407 U.S. at 144–45, 92 S.Ct. 1921, which justified the initial inquiry in that case. *Cf. Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959); *United States v. Ramos-Zaragosa,* 516 F.2d 141 (9th Cir. 1975).

Equally distinguishable are the suspicious circumstances in *Adams.* In this case, all of the trip preparations of DeVita and his acquaintances were wholly innocent, normal behavior. The "further investigation" required by *Adams,* 407 U.S. at 147, 92 S.Ct. 1921, uncovered not a scintilla of suspicious activity.

Because of the unreliability of the informant, the vagueness of the

June tip, the fruitless five-month surveillance of appellant's activities and the subsequent observation of his wholly innocent travel preparations, the agents could rationally infer only that the appellant was driving to Pittsburgh and carrying luggage. These facts do not support founded suspicion.

The motion to suppress should have been granted.

Reversed and remanded.

1. The following ... cui ed at the suppression hearing:
"Q. What caused you to place confidence in him [the informant]? . . .
"A. I do.. believe that I did.
"Q. Did you—you didn't believe what he told you?

"A. I took the standpoint that I should attempt to verify what the informant said.
"Q. You didn't really have any reliability on him. You felt that you better check it out. Would that be fair to state?
"A. That approximates the situation."