UNITED STATES of America, Appellee,

v.

Eli M. GORIN, Appellant.

No. 76–2136.

United States Court of Appeals,
Fourth Circuit.

Submitted Aug. 29, 1977.

Decided Oct. 31, 1977.

David M. Shapiro, Richmond, Va. (court-appointed), Tronfeld, Caudle & Shapiro, Richmond, Va., on brief, for appellant.

William B. Cummings, U.S. Atty., J. Frederick Sinclair, Asst. U.S. Atty., Alexandria, Va., on brief, for appellee.

Before HAYNSWORTH, Chief Judge, BOREMAN, Senior Circuit Judge, and WINTER, Circuit Judge.

PER CURIAM:

Having been convicted of unlawful shipment and possession of firearms in violation of 18 U.S.C. §§ 922(g), 924(a) and 18 U.S.C. App. § 1202(a)(1), Eli M. Gorin appeals to this Court.

The major contention on this appeal is that the trial court erred in admitting into evidence two guns seized at the time of defendant's arrest.

Three New York City detectives, working together in New York City as a decoy unit, and, of course, dressed in civilian clothes, passed by a local bar that several other policemen were entering. These policemen were responding to a radio report based on an anonymous telephone call that a man with a gun was in the bar. The policemen repeated to the detectives the description of the man with the gun—a white male, ap-

proximately six feet tall, wearing a black leather jacket and a reddish shirt. One of the detectives then entered the bar and spoke with the man who made the initial call to the police. This man, to whom the detective referred as the bar owner or bartender, confirmed the description given to the police on the phone and stated that the man with the gun had just left the bar.

The detectives returned to their regular duties, and approximately twenty minutes later (around 11:30 p. m.) and seven blocks away, the detectives observed the defendant sitting in a parked car with two other men, one of whom was white, and the other, black. The defendant matched the description of the man with the gun who had been seen earlier in the bar. After conferring among themselves about the proper course of action, one of the detectives walked over to the car in which the defendant was sitting, identified himself, and asked to speak with the defendant. As Gorin stepped out of the car, the detective noticed a gun at Gorin's waist. The detective took the gun from Gorin and placed him under arrest. A further search of the car and the other occupants led to the discovery of a second weapon.[1]

The question presented by the defendant's challenge to admitting the two guns as evidence is whether the arresting detective had "reasonable suspicion" to undertake the "stop and frisk" that led to the discovery of the first gun. If the detective was justified in questioning Gorin, he also was justified in seizing the gun that he could see even before "patting down" the defendant. Gorin contends that the detectives stopped him because of a suspicion, based on the occupants of the car and the time of the night, that Gorin was participating in a drug deal. The district court expressly concluded during the pre-trial suppression hearing, however, that this was not the detectives' reason for questioning Gorin.

Gorin argues alternatively that the "stop and frisk" was unconstitutional because the "reasonable suspicion" that Gorin possessed a gun was based on a tip from an anonymous informant. As a final alternative, Gorin suggests that even if the detectives knew the identity of the informant, the detectives did not know whether the informant was reliable. We believe the record indicates that the informant was the bar owner or bartender, and thus we consider only the argument concerning the informant's reliability.

Gorin cites several state court decisions holding that "reasonable suspicion" cannot be based on a tip from an informant whose reliability is not known. A fair reading of *Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), however, indicates that in Gorin's situation this lack of information should not preclude a finding of "reasonable suspicion."

█ The record clearly indicates that someone in the bar made the call concerning the person the detectives believed to be Gorin. The informant based his tip on personal observation and gave the police a reasonably specific description of the man with the gun. The detectives confirmed this tip in person with the bar owner or bartender, who they believed to be the original informant. Thus, the informant was in a position of substantial responsibility, which suggests that he would provide reliable information, and the detectives could have identified the informant for further questioning or testimony at trial.

Using this information, the detectives found Gorin only seven blocks away from the bar. Under the circumstances, the detectives' only reasonable alternative was to ask to question Gorin when they did. If the detectives had returned to the bar to verify their information and learn about the informant's reliability, Gorin likely would have left the scene before the detectives returned. On these facts, given the alterna-

---

1. Gorin does not claim that this search was illegal, apart from the fact that it was the fruit of the allegedly illegal arrest. After the gun was taken from Gorin, the detectives found bullets not fitting that gun on the person of one of the other occupants of the car. The detectives then searched the car to determine if another gun was in the car.

tives and information available to the detectives, we cannot conclude that they lacked the "reasonable suspicion" necessary to justify questioning Gorin. Any other conclusion would give an overly narrow reading to *Adams v. Williams, supra,* and *Terry v. Ohio,* 393 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Supreme Court in *Adams* considered the necessity of the policeman's conduct in order to prevent the flight of the defendant. The Court specifically noted that standards of reliability should not prevent appropriate police action when a victim of a crime immediately has contacted the police. *See* 407 U.S. at 147, 92 S.Ct. 1921. That same analysis applies here.

This Court has not previously considered whether "reasonable suspicion" can be based upon a tip from an informant whose reliability is not known. Both *United States v. Poms,* 484 F.2d 919 (4th Cir. 1973) and *United States v. Jefferson,* 480 F.2d 1004 (4th Cir.), *cert. denied,* 414 U.S. 1001, 94 S.Ct. 354, 38 L.Ed.2d 236 (1973), involved tips from informants known to be reliable. The Fifth, Seventh and Tenth Circuits have upheld the use of anonymous tips for establishing reasonable suspicion, although other information corroborated the tips in two of those cases. *See United States v. Legato,* 480 F.2d 408, 410 (5th Cir.), *cert. denied,* 414 U.S. 979, 94 S.Ct. 295, 38 L.Ed.2d 223 (1973); *United States v. Hernandez,* 486 F.2d 614, 616 (7th Cir. 1973), *cert. denied,* 415 U.S. 959, 94 S.Ct. 1488, 39 L.Ed.2d 574 (1974); *United States v. Cage,* 494 F.2d 740, 742 (10th Cir. 1974). The Sixth Circuit upheld the use of a tip from an informant whose reliability was not known, although the tip was corroborated by other information. *See United States v. Preston,* 468 F.2d 1007 (6th Cir. 1972). Only the Ninth Circuit has rejected the use of tips from untested informants, and in that case the tip was very unspecific and the police had had the defendant under surveillance for five months without discovering any evidence of criminal activity. *See United States v. De Vita,* 526 F.2d 81, 82 (9th Cir. 1975). We believe that our holding on the facts of this case is consistent with the decisions of the other Circuits, especially since the informant was identified as a person in a position of substantial responsibility.

Gorin's reliance on *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), and *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), is inappropriate in this case. Those cases concerned the standard of informant reliability necessary for establishing probable cause for a search. The detectives' "stop and frisk" of Gorin here is considered less intrusive, however, and only need satisfy the less stringent test of "reasonable suspicion," as set forth in *Adams* and *Terry, supra.* The high standard for informant reliability established in *Aguilar* and *Spinelli* simply does not apply when the detectives needed only "reasonable suspicion," rather than "probable cause," to justify their actions.

The remaining claim raised by the defendant is that the district court interfered with his *pro se* defense by denying him access to his legal papers. This claim is factually groundless. The record indicates that the district court offered Gorin a copy of the Federal Rules of Criminal Procedure, which probably were the papers Gorin requested, and the district court ordered a recess until Gorin's own legal papers could be brought to him from the jail in which he was incarcerated.

Gorin now complains that these papers were not in fact delivered to him, but the record does not support this contention. Even if the papers were not delivered, Gorin did not apprise the district court of this fact. The one comment in the record Gorin cites as support for his factual contention occurred at the end of Gorin's presentation of his case and is susceptible to other, more plausible interpretations. Thus, Gorin's contention is unsupported factually, and we do not reach the legal questions it raises.

Accordingly, we dispense with oral argument and affirm the judgment of conviction.

*AFFIRMED.*