STATE OF HAWAII, Plaintiff-Appellant, *v.* JEREMIAH KEA, Defendant-Appellee

NO. 6155

FEBRUARY 25, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ.,
AND RETIRED JUSTICE MARUMOTO IN PLACE
OF KIDWELL, J., ABSENT*

*Per Curiam.* This is an appeal by the State from the trial court's order granting the defendant's motion to suppress a handgun recovered by the police from the defendant's automobile and five unspent .38 calibre rounds found on the defendant's person. At issue is whether the trial court erred in granting the motion to suppress.

On January 19, 1976, at 2:11 a.m., an anonymous phone call was received by the Kauai police department. The anonymous caller told the police dispatcher that a heavy-set Hawaiian male with straight black hair and mustache, and operating a vehicle bearing license number F7424 in Kapaa,

---

*Justice Kobayashi, who heard oral argument in this case, retired from the court on December 29, 1978. HRS § 602-11 (1978 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

had displayed a handgun to the informant, telling him that he "had a contract out." The informant also told the dispatcher that as they parted, he saw the Hawaiian male place the gun under the driver's seat.

The police dispatcher immediately relayed this information to officers on patrol in the Kapaa area. Officers DeBusca, Medeiros, Fujiuchi, and Ching promptly responded to the police broadcast. An hour before, Officer Medeiros had seen an automobile fitting the description parked in front of Betty's Inn in Kapaa. Upon receiving the broadcast, he drove directly to where he had seen the car earlier. It was still there when he arrived, and occupying it was a man and a woman engaged in conversation. The rear license number, F7424, matched that given by the informant, and the officer immediately relayed this confirmation to his dispatcher. In the meantime, Officer DeBusca had reached the scene, and both officers made several passes to verify the description of the male occupant. Satisfied that his appearance fit the description given over the police radio, Officer Medeiros kept the vehicle under observation while Officer DeBusca drove to another vantage point. Shortly thereafter, the male occupant, who later turned out to be the defendant, drove off and this information was relayed to Officer DeBusca. The latter saw the vehicle coming towards him but was momentarily confused by the fact that it bore a front license number of 2N1974 instead of F7424. After it passed him by, however, he saw Officer Medeiros following the vehicle, and he immediately drove in behind his fellow officer. The defendant continued to the Coral Reef Hotel where he was then staying and turned into the hotel's parking lot. The officers followed and stopped behind his car. Officers Fujiuchi and Ching did likewise when they arrived. The area was dimly lit and it was then approximately 2:20 a.m.

Officers Medeiros and Ching walked towards the defendant's car, and as they approached, the defendant emerged and stood next to the car with his hands in his pants pockets. Because his shirt was untucked and overlapped the upper portion of his trousers, his hands were not visible to the officers. As they drew closer, the defendant took a step backward. The police asked him for some identification, but

he said he had none and refused to identify himself. Officer Ching then conducted a patdown of the defendant, and from his left front pocket recovered five unspent rounds of .38 calibre ammunition. The defendant was given the *Miranda*[1] warnings, and was then asked whether he would consent to a search of his vehicle. The defendant agreed and turned his car keys over to the police who then searched and recovered the handgun from underneath the driver's seat.

The trial court in its oral findings of fact specifically found that the defendant had consented to the search of his automobile. It held, nevertheless, that inasmuch as the initial stop[2] of the defendant was improper, the subsequent frisk of his person and the search of his automobile, even with his consent, were improper. We disagree.

In granting the motion to suppress, the trial court relied almost exclusively upon *State v. Joao*, 55 Haw. 601, 525 P.2d 580 (1974). We think, however, that the trial court's reliance upon *Joao* was misplaced. In that case the police officer who stopped and frisked the defendant testified:

> Well, the day before, which was January 20, 1973, at about 11 o'clock p.m. at night, I met with a person known to me as a very reliable informant; and this person told me that Walter Joao was carrying a .22 caliber automatic pistol and that he carried it with him whenever he's in Waikiki and traveling around in the town area.

After receiving the tip at 11:00 p.m., the officer decided to go about his routine patrol duties, meanwhile keeping a lookout for the defendant. Five hours later, at Waikiki, he saw the defendant driving out of a parking area. There was nothing illegal or suspicious about the defendant's conduct. The officer nevertheless followed and then stopped the defendant's vehicle, ordered him out, and conducted a patdown of his person. A pistol was discovered and seized as a result of the

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

[2] A "stop" or "seizure" in the constitutional sense occurs "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." Terry v. Ohio, 392 U.S. 1, 19, n. 16.

frisk. The ultimate question was whether a man of reasonable caution would have been justified in concluding, based on the unidentified informant's tip alone, that a crime had been committed or was being committed by the defendant so as to warrant a stop based on *Terry* principles. In the circumstances of that case, this court found that the stop and subsequent frisk were improper.

The facts in the present case, however, are significantly different. The tip here was more substantial and more specific in its contents and it was, in pertinent part, corroborated by police observations. The informant told the police that he was actually shown the gun by the suspect; that he was told by the latter that he "had a contract out;" and that he actually saw the firearm placed under the driver's seat where it was subsequently found by the police. The informant also placed the suspect at Kapaa in a vehicle bearing license number F7424. This same car had been seen by the police an hour earlier and it was still there at the reported location when the police responded to the tip. The informant's descriptions of both the vehicle and its male occupant were verified by the police. Additionally, it was determined, before any stop was made, that the vehicle the defendant was driving bore two different license numbers, 2N1974 in front and F7424 in the back. This fact alone might have been sufficient cause for stopping the defendant for investigative purposes. *See* HRS § 249-11. Under these circumstances, and especially since a firearm was allegedly involved, *see, State v. Goudy*, 52 Haw. 497, 479 P.2d 800 (1971), the police would have been derelict in failing to make at least a brief investigative stop to ascertain whether or not a crime had been committed or was being committed by the defendant. *Id.; State v. Barnes*, 58 Haw. 333, 568 P.2d 1207 (1977).

We are, however, faced with the additional question of whether the police had the right to frisk the defendant. In *Terry v. Ohio, supra,* the court stated:

[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and

presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him. Such a search is a reasonable search under the Fourth Amendment, and any weapons seized may properly be introduced in evidence against the person from whom they are taken. 392 U.S. at 30-31.

Here the defendant was allegedly in possession of a firearm and had allegedly told the informant that he "had a contract out." He was stopped at 2:20 a.m. and the area where the confrontation took place was dimly lit. The defendant was standing next to his vehicle with his hands in his trouser pockets. His shirt overlapped and covered the upper part of his trousers which helped to shield his hands from view. He had no identification papers with him, and he refused to identify himself when requested to do so by the police. In these circumstances, a protective patdown of the defendant's person was justified. The resultant discovery and seizure of the live ammunition from the defendant's shirt pocket was therefore proper. As to the handgun itself, the trial court specifically and expressly found that the defendant had given his consent to the search. This finding is not disputed on appeal.

Reversed.

*Calvin K. Murashige,* Deputy Prosecuting Attorney for plaintiff-appellant.

*James G. Jung, Jr.,* Deputy Public Defender for defendant-appellee.