No. 80–6704. WHITE *v*. UNITED STATES; and

No. 80–6759. ANDERSON *v*. UNITED STATES. C. A. D. C. Cir. Certiorari denied. Reported below: 208 U. S. App. D. C. 289, 648 F. 2d 29.

JUSTICE WHITE, with whom JUSTICE BRENNAN and JUSTICE MARSHALL join, dissenting.

Two Terms previous, I dissented from a denial of certiorari that left the state and lower federal courts in conflict and confusion over whether an anonymous tip may furnish reasonable suspicion for an investigatory detention. *Jernigan* v. *Louisiana*, 446 U. S. 958 (1980). Because it remains apparent that this difficult issue of everyday importance to law enforcement officials and citizens on the street alike requires resolution here, I am again moved to note my dissent.

The District of Columbia Police received an anonymous telephone call informing them that a young black man known as "Nicky" and wearing a blue jumpsuit had parked his 1971 Ford at No. 1 15th Street, N. E., entered a 1974 Oldsmobile, and driven away. The caller, who further identified the cars by color and license number, said that "Nicky" and the unidentified driver of the Oldsmobile were involved in narcotics traffic and would be "dirty" with drugs when they returned. The caller refused to identify himself or how he obtained this information.

Upon receipt of the tip, two police officers, working out of uniform, established surveillance at the address given. They observed the Oldsmobile returning with a black male passenger in a blue sweatsuit, but saw no suspicious activity. The officers pulled their unmarked cruiser alongside the Oldsmobile partially blocking its access, displayed ·police identification, approached the car with guns drawn, and ordered the men, the petitioners in these cases, out of their automobile. Heroin and narcotics paraphernalia were subsequently discovered, leading to the men's arrest and conviction for possession of and intent to distribute heroin.

A divided panel of the United States Court of Appeals for the District of Columbia Circuit affirmed the trial court's denial of petitioners' motion to suppress the evidence seized from the Oldsmobile as the fruit of an invalid investigatory stop. 208 U. S. App. D. C. 289, 648 F. 2d 29 (1981). The majority first determined that the actions of the police should be treated as a brief investigatory detention, *Terry* v. *Ohio*, 392 U. S. 1 (1968), instead of an arrest.[1] It then concluded that the stop was valid because of the specificity of the descriptions provided and the verification of that information by the police. Judge Edwards strongly dissented on both points. The majority admitted that "[t]he question whether an anonymous tip corroborated only by observation of innocent details justifies a *Terry* stop is a live and disputed one," 208 U. S. App. D. C., at 303, 648 F. 2d, at 43.

Arguably, the decision of the Court of Appeals is inconsistent with our prior cases which require that reasonable suspicion be based on a sufficiently reliable informant's tip. In *Adams* v. *Williams*, 407 U. S. 143 (1972), we not only recognized that "[s]ome tips, completely lacking in indicia of reliability, would either warrant no police response or require further investigation before a forcible stop of the suspect would be authorized," *id.*, at 147, but also explicitly noted that *Adams* presented a stronger case "than obtains in the case of an anonymous telephone tip," *id.*, at 146. Informers who have provided accurate tips in the past, *e. g.*, *Terry*, *supra*, or who offer tips that can be immediately confirmed on the scene, *e. g.*, *Adams*, *supra*, stand on a much firmer ground of reliability than anonymous telephone callers.

Other Federal Courts of Appeals have taken widely divergent positions on the reliability of an unidentified tipster. Compare *United States* v. *McLeroy*, 584 F. 2d 746 (CA5 1978), and *United States* v. *Robinson*, 536 F. 2d 1298 (CA9

---

[1] The Government concedes that the tip did not provide probable cause for arrest at the time the officers approached the car. 208 U. S. App. D. C., at 292, 648 F. 2d, at 32. See *Aguilar* v. *Texas*, 378 U. S. 108 (1964).

1976) (no reasonable suspicion), with *United States* v. *Rodriguez Perez*, 625 F. 2d 1021 (CA1 1980), and *United States* v. *Andrews*, 600 F. 2d 563 (CA6) (reasonable suspicion), cert. denied, 444 U. S. 878 (1979). Compare *United States* v. *DeVita*, 526 F. 2d 81 (CA9 1975) *(per curiam)* (known but untested informant; no reasonable suspicion), with *United States* v. *Gorin*, 564 F. 2d 159 (CA4 1977) (known informer but no proof of reliability; reasonable suspicion found), cert. denied, 434 U. S. 1080 (1978). The state courts are in similar disarray.[2]

---

[2] For cases finding that an anonymous tip with corroboration of innocent details does not establish reasonable suspicion, see *Jackson* v. *State*, 157 Ind. App. 662, 301 N. E. 2d 370 (1973); *Commonwealth* v. *Cruse*, 236 Pa. Super. 85, 344 A. 2d 532 (1975); *State* v. *Wilson*, 366 So. 2d 1328 (La. 1978); *Commonwealth* v. *Anderson*, 481 Pa. 292, 393 A. 2d 1298 (1978); *Conor* v. *State*, 260 Ark. 172, 538 S. W. 2d 304 (1976); *Ebarb* v. *State*, 598 S. W. 2d 842 (Tex. Crim. App. 1980); *State* v. *Sieler*, 95 Wash. 2d 43, 621 P. 2d 1272 (1980) (en banc).

For decisions finding reasonable suspicion, see *State* v. *Hobson*, 95 Idaho 920, 523 P. 2d 523 (1974); *People* v. *Taggart*, 20 N. Y. 2d 335, 229 N. E. 2d 581 (1967), appeal dism'd, 392 U. S. 667 (1968); *State* v. *Barton*, 92 N. M. 118, 584 P. 2d 165 (1978); *State* v. *Kea*, 61 Haw. 566, 606 P. 2d 1329 (1980); *Radowick* v. *State*, 145 Ga. App. 231, 244 S. E. 2d 346 (1978); *Henighan* v. *United States*, Crim. No. 80–169 (D. C. Ct. App., June 10, 1981); *State* v. *Webb*, 398 So. 2d 820 (Fla. 1981); *State* v. *Hasenbank*, 425 A. 2d 1330 (Me. 1981); *Mann* v. *State*, 525 S. W. 2d 174 (Tex. Crim. App. 1975); *People* v. *Tooks*, 403 Mich. 568, 271 N. W. 2d 503 (1978).

While the determination of reasonable suspicion is heavily dependent on the specificity of the information, the amount of verification, and the urgency of a particular situation, the conflicting results cannot be explained as accounting for different factual patterns. Compare *People* v. *De Bour*, 40 N. Y. 2d 210, 352 N. E. 2d 562 (1976) (anonymous call that black man in bar wearing red shirt had gun; no reasonable suspicion), with *State* v. *Jernigan*, 377 So. 2d. 1222 (La. 1979) (anonymous call that black man in bar wearing yellow shirt and blue pants had gun; reasonable suspicion), cert. denied, 446 U. S. 958 (1980). Also compare *Jackson* v. *State*, *supra* (anonymous call that man in car, precisely located, had gun; no reasonable suspicion), with *People* v. *Taggart*, *supra* (anonymous call that man on corner, precisely located, had gun; reasonable suspicion).

While I find the conflict in the federal and state courts sufficient reason to grant certiorari, the argument for doing so is especially strong when such uncertainty involves a fundamental aspect of law enforcement operations. Similar investigatory stops are conducted daily on the Nation's streets. Moreover, because of the lesser quantum of evidence required, *Terry* stops are likely to involve innocent citizens. Here, where not only is the detention on the "outermost perimeters of the *Terry* doctrine," 208 U. S. App. D. C., at 303, 648 F. 2d, at 43, but also at the very intersection between brief stops and full-scale arrests, the overall judgment of reasonableness under the Fourth Amendment is very seriously drawn into question. Conversely, the "Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape." *Adams* v. *Williams, supra,* at 145. Because clarification of the boundaries of legitimate police activity under the Constitution is ultimately this Court's responsibility, I would grant certiorari.