**UNITED STATES of America, Plaintiff,**

v.

**Michael VEATCH, Defendant.**

**Crim. No. 84–38.**

United States District Court,
W.D. Pennsylvania,
Pittsburgh Division.

Oct. 22, 1984.

Timothy K. Lewis, Asst. U.S. Atty., Pittsburgh, Pa., for plaintiff.

George Schmacher, Federal Public Defender, Pittsburgh, Pa., for defendant.

## OPINION

SIMMONS, District Judge.

Following a three count indictment for unlawful possession of an illegal firearm, the defendant, Michael Veatch, moved to suppress physical evidence stemming from an allegedly illegal arrest, search and seizure. A hearing was held on the defendant's motion. The testimony is contradictory; the defendant vigorously disputes the government's version of the facts. This case, therefore, pivots on the credibility of the witnesses and their stories.

### I. FACTUAL BACKGROUND.

On a fall afternoon in 1983, Police Officer Vince DeCarlo was conducting an undercover investigation of a jitney stand reputed as a fencing operation for stolen goods. DeCarlo observed Louis Wisensee emerge from the front passenger seat of a 1972, fire-engine-red, Chevrolet and enter the jitney station carrying several fishing rods. The defendant, Michael Veatch, owner and operator of the vehicle, and his brother, William Veatch, sitting in the rear seat, awaited Wisensee's return.

Officer DeCarlo observed Wisensee sell the fishing rods and then exit the jitney stand. While returning to Veatch's automobile, Wisensee, who had had prior brushes with the law, recognized DeCarlo as an undercover police officer, and hurriedly entered the awaiting vehicle, which sped away. DeCarlo gave pursuit. With the aid of two uniformed officers in a police van, who had responded to DeCarlo's radio call for assistance, Veatch's vehicle was quickly stopped and its occupants apprehended.

When Veatch's car was stopped, the officers detected the odor of paint lacquer emanating from within the passenger compartment and noted that the occupants' faces were red and their eyes bloodshot. In plain view, on the front seat of the car,

sat a gin bottle containing a clear substance. A sundry of rags soaked in paint lacquer, laid about the passenger compartment. When ordered out of the vehicle, the occupants appeared unsteady and swayed. Officer DeCarlo testified that, in his law enforcement experience, paint lacquer soaked into rags and inhaled, was a common method of "getting high." The occupants of the vehicle were then arrested for illegal use of solvents.

Prior to the arrest, the occupants were frisked for weapons. The frisk produced a live, 12-gauge shotgun shell from the front pocket of Veatch's trousers. When the officer discovered the shotgun shell, Veatch abruptly exclaimed: "I have a gun in the car!" The occupants were advised of their *Miranda* rights and a search of the automobile revealed a Harrington and Richardson, 12-gauge, single-barrel, shotgun. The weapon's shoulder and barrel were sawed-off and the serial number obliterated; the chamber contained one live round.

In his testimony, Veatch denied that Wisensee quickly fled the jitney stand and that the car was driven erractically and speedily to avoid apprehension. Veatch also disputes the basis of the arrest. Veatch denies that the occupants had been inhaling paint lacquer and that its fumes were emanating from within the stopped vehicle, but argues that the lacquer-filled bottle was found, not at the time of the arrest, but in a subsequent inventory search after the arrest.

In addition, Veatch disputes the government's version of the facts regarding the search of his car. Veatch testified that after he was placed under arrest, Officer DeCarlo immediately opened the trunk of Veatch's car and discovered the weapon. Veatch denies admitting ownership of the shotgun and that his *Miranda* warnings were given. Although Veatch acknowledges that he was frisked at the arrest scene, he avers that the shotgun shell was not found until a second frisk which occurred at the police station. Veatch testified that two uniformed officers, who knew

Veatch and his brother, came to Veatch's cell after their incarceration, conducted a second search and discovered the shotgun shell.

## II. DISCUSSION.

This case requires no protracted factual or legal analysis. At the outset, it should be noted, the defendant paints an incredulous picture and this Court accordingly discounts his version of the facts. Although corroborated by a supposedly independent observer, this Court finds incredible Veatch's story that no chase occurred; the objective facts point to the contrary. Whether a chase occurred, however, is a question of fact to be determined by this Court from the totality of the circumstances.

Officer DeCarlo testified that when Wisensee recognized him as a police officer, Wisensee hurriedly returned to the awaiting car and Veatch speedily drove away. Wisensee was not called to testify. A seven year acquaintance of Veatch testified that he saw Veatch's car that fall afternoon traversing on North Avenue near the arrest scene, immediately prior to the arrest, and that he observed no evidence of a chase. Veatch testified that no chase occurred, but acknowledged that Wisensee recognized DeCarlo as a law enforcement officer and informed Veatch that the officer was closely following Veatch's car with his emergency lights flashing.

Absent purpose of evasion, Wisensee's statement to Veatch that they were being followed by a police officer, stands as an anomaly in the record. More telling evidence of a chase, however, is DeCarlo's request for assistance in stopping Veatch's automobile and the manner in which the car was stopped. Veatch testified that the officers boxed his car in with their service vehicles to impede his car's mobility. Moreover, there is no evidence to suggest that, absent evasion, Officer DeCarlo could not have singularly stopped Veatch's car or apprehended Wisensee before he returned to the car. Leaving aside the disputed

testimony, the objective facts suggest that Veatch attempted to avoid apprehension.

### A. Temporary or Investigatory Detention: Reasonable Suspicion of Criminal Activity.

■ It is beyond doubt that Veatch's vehicle was lawfully stopped. The Supreme Court has long ago recognized that a temporary or investigatory detention for the purpose of investigating possible criminal behavior, even though there is no probable cause to arrest, is consistent with the Fourth Amendment's proscription against unreasonable searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Circumstances short of probable cause to arrest may justify a stop for questioning. Likewise, a law enforcement officer may lawfully stop a motor vehicle and conduct a limited investigatory inquiry of its occupants. *See United States v. Kelley*, 462 F.2d 372, 374–75 (4th Cir.1972).

■ In this case, Officer DeCarlo was conducting an undercover surveillance of a business establishment known by him to be a fencing operation. After the officer witnessed Louis Wisensee, a passenger in Veatch's car, sell fishing rods at that establishment, he was lawfully clothed with the authority to conduct a temporary investigatory detention of Wisensee to ascertain whether criminal activity was afoot. Merely because the suspect's activity is consistent with innocent behavior or is obstensibly innocuous does not alone make a detention and a limited investigation unlawful. *See United States v. Forero-Rincon*, 626 F.2d 218, 221–23 (2d Cir.1980). This is so, because the "reasonable suspicion" to detain standard, which is less stringent than the "probable cause" to arrest standard, permits an investigatory stop where the facts within the officer's knowledge and his reasonably drawn inferences support a fair suspicion that a crime is being committed.

Here, an investigatory detention was warranted.

### B. Probable Cause to Arrest.

■ To test the legality of an arrest the Court must determine whether, at the time of the arrest, the officers had probable cause to believe a crime had been committed and that the suspect had committed the crime. *See Hill v. California*, 401 U.S. 797, 804, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971). Probable cause has been defined as "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *See Gerstein v. Pugh*, 420 U.S. 103, 111–12, 95 S.Ct. 854, 861–62, 43 L.Ed.2d 54 (1975), *citing, Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225–26, 13 L.Ed.2d 142 (1964). The determination of probable cause is dependent on the facts and circumstances of each case and on "practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *See Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949).

■ The police officer in this case testified that when Veatch's car was stopped, the officer detected the odor of paint lacquer emanating from within the vehicle. When the officer ordered the occupants out of the car, the occupants exhibited visible signs of intoxication, and the officer saw in plain view, paraphernalia used for inhaling solvents. The officer concluded that the occupants were intoxicated from inhaling solvent fumes and placed them under arrest for illegal use of solvents.[1]

■ That the officers may have wrongfully concluded that the occupants of Veatch's motor vehicle were intoxicated from unlawfully inhaling paint lacquer does not render the arrest invalid. The Supreme Court in *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed.

---

**1.** The evidence in this case strongly supports a conclusion that a chase occurred. When Veatch attempted to avoid apprehension he manifestly committed a crime in the officer's presence and was subject to arrest on that basis. That Veatch was not charged by the officer for traffic violations or attempting to avoid apprehension makes his arrest for unlawful use of solvents no less valid.

1879 (1949), recognized that errors on the part of arresting officers will not invalidate an arrest if the errors are "those of reasonable men, acting on facts leading sensibly to their conclusion of probability." *Id.* at 176.

 In reaching the probable cause determination, a police officer must draw upon his law enforcement experience and personal knowledge and rely upon his direct observations. *See United States v. White*, 648 F.2d 29 (D.C.Cir.1981), *cert. denied*, 454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233 (1981). Officer DeCarlo testified that, in his experience, inhaling paint lacquer is a common method of "getting high." Under the circumstances of this case, the officer was armed with sufficient facts to justly conclude that solvents had been improperly used in Veatch's vehicle and that the occupants were culpable. To this end, the officer acted as any reasonable and prudent law enforcement officer on the scene would have, given his experience and training, in arresting the occupants for illegal use of solvents. The arrest was therefore lawful.

### C. The Automobile Exception to the Warrant Requirement: Warrantless Searches.

Under the automobile exception to the warrant requirement, the United States Supreme Court has adopted a common sense approach to determine whether probable cause justifies the warrantless search of a lawfully stopped vehicle. Nearly sixty years ago, the Supreme Court established that a warrantless search of a lawfully stopped vehicle, based on a reasonable or probable belief that the automobile has contraband, does not offend the Fourth Amendment. *See Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). More recently, that Court held that the scope of a warrantless search under the automobile exception "is no broader and no narrower than [the facts upon which] a magistrate could legitimately issue [a search warrant]. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *See United States v. Ross*, 456 U.S. 798, 825, 102 S.Ct. 2157, 2172, 72 L.Ed.2d 572 (1982). In its most recent pronouncement, the Court precisely defined the standard for probable cause determinations, noting that probable cause to conduct a warrantless search must be based on objective facts using "a practical, common sense decision whether, given all the circumstances ..., there is a fair probability that contraband or evidence of a crime will be found in a particular place." *See Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).

Using this standard, this Court must decide whether the officers justifiably concluded, under the totality of the circumstances, that they would discover contraband in Veatch's automobile. Here, this Court holds that the officers had a substantial basis for concluding that there was probable cause to search the defendant's vehicle. The Court's conclusion is reached on three basis.

 First, the automobile exception to the warrant requirement donned the officers with the legal authority to conduct a highway search of Veatch's vehicle, because the officers had probable cause to believe that the automobile contained solvents for illegal use. The circumstances surrounding the arrest gave rise to a fair probability that Veatch had solvents in his automobile: Veatch's car was erractically driven; the odor of paint lacquer emanated from within the car; the occupants appeared to be intoxicated; and the instrumentalities of solvent inhalation was in plain view in the passenger compartment. Under these circumstances, similar to *United States v. Schecter*, 717 F.2d 864, 869–70 (3d Cir.1983), this Court believes that the objective facts support the officers conclusion that they would find additional evidence of the illegal use of solvents throughout Veatch's vehicle.

Second, a warrantless roadside search of Veatch's vehicle was justified because the officers also had probable cause to believe that the automobile contained stolen goods. Officer DeCarlo testified that he was conducting an undercover investigation of a jitney stand when Louis Wisensee emerged from Veatch's car, entered the stand and, once inside, sold several fishing rods. The officer had independent knowledge that the jitney stand was involved in receiving stolen goods. When Wisensee exited the stand and recognized DeCarlo as a police officer, he fled the scene in Veatch's car. Standing alone, flight does not rise to the level of probable cause; but in light of the circumstances accompanying Wisensee's conduct, coupled with the officer's personal knowledge that the jitney stand was a fencing operation and his observation of an atypical sales transaction, Wisensee's flight warranted the officer's conclusion that he would find stolen goods in Veatch's trunk.

Finally, the automobile exception justifies the warrantless search of Veatch's vehicle because the officers had probable cause to believe that a weapon was hidden in the car. At the arrest scene, Veatch was frisked for weapons. When the frisk produced a 12-gauge shotgun shell from Veatch's front trouser pocket, Veatch blurted out: "I have a gun in the car!" The officers found a sawed-off shotgun in the trunk of Veatch's car. After an automobile is lawfully stopped, additional articulable facts may develop to support probable cause for a warrantless search. *See United States v. Laird,* 511 F.2d 1039, 1040 (9th Cir.1975). Here, after the discovery of the shotgun shell, Veatch's statement that a gun was in the car, provided the additional and sufficiently articulable fact to support a probable cause belief that the car contained a concealed weapon. This is especially true in view of Veatch's earlier attempt to avoid apprehension. *Cf. United States v. Burke,* 506 F.2d 1165, 1171 (9th Cir.1974), *cert. denied,* 421 U.S. 915, 95 S.Ct. 1576, 43 L.Ed.2d 781 (1975).

For these reasons, the suppression motion of the defendant, Michael Veatch, is denied.