Robert L. Tucker, Office of Federal Public Defender, Washington, D.C., for defendant.

**UNITED STATES of America**

v.

**Ronald T. CLIPPER.**

**Crim. No. 90–0467 (OG).**

United States District Court, District of Columbia.

March 12, 1991.

## MEMORANDUM

GASCH, Senior District Judge.

Defendant, by counsel, has moved to suppress the seizure of narcotics which the police state were taken from his person. To fully understand the implications of this case, the *Terry* doctrine must be reviewed. Terry and two associates were observed by Detective McFadden of the Chicago police apparently "casing" a store on McFadden's beat. McFadden did not know them nor had he any tip respecting their illegal activities or whether any of them possessed a pistol. He knew that armed robbery and burglary had taken place on his beat. It was conceded that he lacked probable cause to make an arrest. The Supreme Court sustained the action he took in what is now generally known as the *Terry* stop and frisk doctrine. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). McFadden approached Terry, spun him around, patted him down, and discovered a pistol, which he seized. He did the same to one of Terry's associates.

Chief Justice Warren, writing for the Supreme Court, at page 22, 88 S.Ct. at page 1880, described the situation as follows:

> One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. It was this legitimate investigative function Officer McFadden was discharging when he decided to approach petitioner and his companions.

392 U.S. at 22, 88 S.Ct. at 1880. At page 23, 88 S.Ct. at page 1881, the Chief Justice provided further details as to the justification for McFadden's action:

> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him.

392 U.S. at 23, 88 S.Ct. at 1881. And, at page 24, 88 S.Ct. at page 1881, the opinion states:

> [I]t would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

392 U.S. at 24, 88 S.Ct. at 1881. At pages 26–27, 88 S.Ct. at pages 1882–83, the Court further filled in the details justifying the stop and frisk doctrine:

> It does not follow that because an officer may lawfully arrest a person only when he is apprised of facts sufficient to warrant a belief that the person has committed or is committing a crime, the officer is equally unjustified, absent that kind of evidence, in making any intrusions short of an arrest. Moreover, a perfectly reasonable apprehension of danger may arise long before the officer is possessed of adequate information to justify taking a person into custody for the purpose of prosecuting him for a crime.

392 U.S. at 26–27, 88 S.Ct. at 1882–83. And, at page 27, 88 S.Ct. at page 1883, the Court further elaborated the doctrine as follows:

> The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

392 U.S. at 27, 88 S.Ct. at 1883.

■ In the case under consideration, the police officers, proceeding in a westerly direction in the neighborhood of 4th and Rhode Island Avenue, N.E., monitored a lookout from the dispatcher to the effect that a black male, wearing a black hat and a blue and green jacket, walking south on First Street, N.W., between U and V Streets, was armed with a pistol. Officer Sherrie Bonner, a veteran of six years' service on the police force, most of which was in the Narcotics Branch, was operating the unmarked police cruiser. She and her partner proceeded to First Street, N.W., where they made a right turn upon observing a man fitting the description broadcast by the dispatcher. She stopped the cruiser, both officers got out and went to the defendant. Each had drawn the service weapon. They directed the defendant to place his hands on the fence surrounding a church located at that point. The defendant was slow in complying although the officers had announced that they were police. Each was dressed in casual clothes. Officer Bonner directed her partner to commence a pat-down search, noticing a bulge in the right jacket pocket. It developed that this was a large sum of currency, some of which was secured by a rubber band and the rest was loose. Officer Jones, a husky but relatively inexperienced officer, pulled out this money, which he held in his right hand and continued the pat-down with his left. He felt a hard object in defendant's crotch area. When he touched it, defendant threw up his hands, which had the effect of knocking the currency out of Jones' hand and instantaneously, the defendant ran up the street in a northerly direction. The officers did not stop to pick up the money. Jones pursued him, followed by Bonner, who had a police walkie-talkie, into which she stated what had happened and called for assistance. At about First and T Streets, N.W., Officer Jones overtook the defendant. They struggled. Officer Bonner told Officer Jones to put him down. This was done but it did not end the struggle. The officers had observed during the chase that defendant seemed to be trying to reach with his hands an object in the area of his crotch. They were uncertain as to what this was since the frisk had not been completed and they were apprehensive that it might be the

weapon to which the dispatcher had made reference.

Sometime later and while the struggle was continuing, other units responded to the scene. The defendant was subdued and from his hand was taken a brown paper bag which contained approximately 100 ziplock packages of a whitish rock-like substance, subsequently found to be crack cocaine.

Defendant, through counsel, contends that the anonymous tip broadcast by the dispatcher was an inadequate basis for the *Terry* stop. He also contends that the narcotics seized from him was in fact planted on him by the police. He also contends that he was roughed up by the police and sustained injury in the course of the beating, which included a fractured bone in the occipital region of his eye.

Upon consideration of the evidence submitted in Court on the motion to suppress, the Court concludes that there was an adequate basis for the *Terry* stop.

DISCUSSION

On the day the Supreme Court announced its opinion in *Terry*, it also decided *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Sibron had been arrested by a city police officer for possessing heroin. The evidence on which the officer relied was that he had observed Sibron conversing with several individuals known to the officer to be drug addicts. The officer had not observed the transfer of any suspected narcotics nor had he overheard any of the conversation. The conviction, sustained by the state court, was reversed. After discussing the inadequacy of the basis for the officer's seizure of the heroin, the Court said, at page 60, 88 S.Ct. at page 1901, "If Patrolman Martin lacked probable cause for an arrest, however, his seizure and search of Sibron might still have been justified at the outset if he had reasonable grounds to believe that Sibron was armed and dangerous." 392 U.S. at 60, 88 S.Ct. at 1901 (citing *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)).

In the instant case, the officers had received a call from the dispatcher to the effect that a black male with a black hat and a blue and green jacket was armed with a pistol and was proceeding south on First Street near U Street. Upon arriving at a point where the path of the cruiser and the path of the defendant intersected, he was observed by the officers and he reasonably met the description of the person believed to be carrying a pistol.

The officers proceeded to take action in accordance with the principles announced in *Terry*, which resulted with the stopping of defendant and the subsequent pat-down. When he asked what he was being stopped for, Officer Bonner said, we are checking something out. In the momentary frisk, which revealed the bundle of cash in his right jacket pocket and a hard object in his crotch area, no determination had been made by the police respecting the need for detention. The pat-down was continuing. Suddenly the defendant knocked the bundle of cash from Officer Jones's hand and bolted and ran. Officer Jones followed the defendant and sought to apprehend him. Officer Bonner called into the walkie-talkie a brief report on what had happened and requested assistance. Officer Jones caught up with the fleeing suspect and after a brief struggle, wrestled him to the ground on the median strip located at First and T Streets. Both officers were still trying to gain possession of the second hard object contained in a brown paper bag which defendant was clutching to his midsection. When assisting officers arrived, the police gained possession of the brown paper bag. It contained 100 ziplock packets of crack cocaine. Defendant was then arrested and taken into custody.

The first problem with which the Court is confronted is an analysis of the cases involving an anonymous tip. In *United States v. White*, 648 F.2d 29, 45 (D.C.Cir. 1981), Judge Wald, writing for the Court, summarized the requirements of the *Terry* stop and frisk doctrine as follows:

> We do not find anything in *Terry* or its underlying rationale to require that the articulable facts and inferences upon which reasonable suspicion may rest can never be grounded in an anonymous tip,

where an array of noncriminal details have been corroborated by the officers' own observations and where the suspects are in a position to move away.

648 F.2d at 45. The case in which Judge Wald was speaking was a narcotics case and the anonymous tip was confined to drugs and did not specify anything about the defendant's being armed. The essential information given by the anonymous tipster was that a young black male known as Nicky, about 19 or 20 years old, wearing a blue jump suit with white stripes, had parked his 1971 Ford LTD in front of No. 1 15th Street, N.E., and had entered a 1974 Oldsmobile and driven away in it. License tags for both cars were given. The informant further stated that Nicky was involved in narcotics traffic and would be "dirty" with drugs when he returned. Detective Hill and his partner went to the location in question and waited for the Oldsmobile to return. With weapons drawn, they approached the driver and his passenger. They directed the driver and his passenger to exit the Oldsmobile and place their hands on the hood. The officers' attention had been attracted to what they thought was a tinfoil object, like the ones used in narcotics traffic, dropping from the defendant's hand as he got out of the vehicle. The Court of Appeals sustained the *Terry* stop, which developed into an arrest and a conviction.

The Court acknowledged that there was a split of opinion in the circuits respecting the weight to be given anonymous tips. The first case to which Judge Wald referred was *Bailey v. United States*, 389 F.2d 305 (D.C.Cir.1967). In that opinion, the Court was confronted with the following facts: Three Negro males had robbed and beaten an old farmer who was making egg deliveries. Part of the incident was observed by a passerby not otherwise identified except that his name was Donald E. Leigh, who called the police and described the getaway car in which the robbers left the scene as a blue 1953 or 1954 Chevrolet hardtop. An officer directing traffic approximately three miles distant heard the broadcast and recalled such a vehicle passing his intersection containing four young Negro males. This information he gave the dispatcher. Approximately three and one-half miles distant from that intersection, the officers who subsequently took action observed such a vehicle and stopped it. The question was whether there was probable cause to make this arrest, if it were an arrest. Upon stopping the vehicle, the officers asked the driver for his driver's license. Upon returning it, he saw a brown wallet on the floor, protruding from under the front seat. He asked whose it was. No one claimed it. A search revealed that it belonged to the robbery victim. Appellant was then arrested. Judge Leventhal, concurring, stated, at page 314:

What the police did was stop a car to check out what everyone concedes were suspicious circumstances. * * * A mere stop—though it also must have some justification in the facts—is not necessarily an "arrest" that triggers the requirement that the person be taken to a magistrate "as quickly as possible" as Rule 5 commands when an arrest is made. * * * What the police did was to act reasonably to bring a situation under control; they had no way of knowing whether the car would leave the jurisdiction, and once the occupants scattered it would be nearly impossible to reassemble them again. As Judge McGowan pointed out in *Dorsey v. United States*, 125 U.S. App.D.C. 355, 358, 372 F.2d 928, 931 (1967): "If policemen are to serve any purpose of detecting and preventing crime by being out on the streets at all, they must be able to take a closer look at challenging situations as they encounter them."

389 F.2d at 314.

It is noted that the date of this case is a year before the Supreme Court enunciated the *Terry* doctrine. In footnote 9, Judge Leventhal reported: "A substantial number of cases recognize that there may be a brief on-the-scene detention of a person or vehicle to clear up suspicious circumstances by asking questions, without having the detention constitute an arrest." (Citing cases.) 389 F.2d at 315 n. 9. Anonymous tip cases from other jurisdictions relied

upon in Judge Wald's opinion in *White*, are the following: *United States v. Afanador*, 567 F.2d 1325, 1329 (5th Cir.1978); *United States v. Gorin*, 564 F.2d 159, 161 (4th Cir.1977), *cert. denied*, 434 U.S. 1080, 98 S.Ct. 1276, 55 L.Ed.2d 788 (1978); *United States v. Andrews*, 600 F.2d 563 (6th Cir.), *cert. denied sub nom. Brooks v. United States*, 444 U.S. 878, 100 S.Ct. 166, 62 L.Ed.2d 108 (1979); *United States v. Sierra–Hernandez*, 581 F.2d 760 (9th Cir.), *cert. denied*, 439 U.S. 936, 99 S.Ct. 333, 58 L.Ed.2d 333 (1978); *United States v. Jones*, 599 F.2d 1058 (9th Cir.1979).

Reference was also made in Judge Wald's opinion to the case of *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). There, an informant named Hereford reported that Draper would arrive in Denver on a train from Chicago in one or two days and that he would be carrying a quantity of heroin. The informant supplied a brief description of Draper and predicted he would be wearing a light-colored raincoat, brown slacks and brown shoes and would be walking "real fast." Hereford supplied no basis for this information. Police observed a man fitting Hereford's description and placed him under arrest. He was indicted, tried and convicted and his conviction was sustained by the Supreme Court. It is noted that in *Draper*, probable cause was found. It is also noted that Hereford was regarded by the police as a reliable informant.

 The information on the basis of which Draper was arrested is no more detailed than that broadcast by the dispatcher in the instant case. As the Court of Appeals pointed out in *White*, citizens calling the police and supplying anonymous tips are often reluctant to identify themselves and give more detailed information for the fear of implicating themselves in future retaliation. It is important to note that, when the police act as they did in *Terry* and as they did in the instant case on the information that a suspect is believed to be armed, reasonable prudence requires that

they perform their duty in such a way that both the public and the arresting officers will not be harmed. It is also noted that in the instant case, the pat-down was continuing when suddenly the defendant broke and ran. This circumstance of flight, while not conclusive, adds materially to the quantum of suspicion justifying the chase and subsequent apprehension of the defendant. It is clear that, when the police seized the crack cocaine from the defendant's person, they had probable cause to make the arrest.

Defense counsel, in arguing his motion to suppress, brought to the attention of the Court the Supreme Court decision in *Alabama v. White*, ——— U.S. ———, 110 S.Ct. 2412, 2413, 110 L.Ed.2d 301 (1990). The Court's opinion by Justice White overruled the state court's opinion which had declared the *Terry* stop invalid. 550 So.2d 1074 (Ala.Crim.App.1989). In the *White* case, the police had received an anonymous tip on the basis of which the police stopped respondent's car and a consensual search revealed the presence of illicit drugs. The issue was whether the police had adequate corroboration of the anonymous tip which amounted to articulable suspicion. The tip revealed that one Vanessa White would be leaving a certain apartment house in a Plymouth station wagon with a right broken taillight and that she would be going to Dobey's Motel and that she would be in possession of an ounce of cocaine. The police followed the brown Plymouth station wagon to Dobey's Motel, whereupon they stopped the vehicle and a search revealed marihuana. The Court of Criminal Appeals of Alabama ruled that the officer did not have reasonable suspicion to justify the investigatory stop. 550 So.2d 1074 (Ala. Crim.App.1989). On the State's petition, the Supreme Court granted *certiorari* and reversed. The specifics of the verification of the anonymous tip will, as the Court has indicated in *Illinois v. Gates*, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983),[1] vary greatly from case to case. In

---

**1.** "Informants' tips doubtless come in many shapes and sizes from many different types of persons. As we said in *Adams v. Williams*, 407

U.S. 143, 147 [92 S.Ct. 1921, 1924, 32 L.Ed.2d 612] (1972): 'Informants' tips, like all other clues and evidence coming to a policeman on

the instant case, the officers had a fair description of the defendant and the direction in which he was walking. The important detail transmitted to them by the dispatcher was that he was armed. When confronted with an armed suspect, more direct action is required. Protective action is required by the officers for their safety and for that of people in the area. It must always be emphasized that the action of the police must be reasonable; it must be prompt. Here, the officers were confronted with a man who fit the description given by the dispatcher who was believed to be armed. They were conducting a routine pat-down or frisk. When Officer Jones felt a hard object in the defendant's crotch area, he had further reason to investigate. The defendant was confronted with a dilemma. He knew what this hard object was. It proved to be a bag containing approximately 100 ziplocks of crack cocaine. If this were discovered, it would constitute a proper basis for the probable cause needed to transform the *Terry* stop into an arrest. Defendant made a quick decision to flee from the police. Unfortunately for him, he was caught and the narcotics were seized, whereupon defendant was arrested. Flight from the police under the circumstances of this case obviously may be taken into consideration. It was the final element which justified pursuit, apprehension, seizure and arrest. Nothing in Justice White's opinion in *Alabama v. White* leads the Court to believe, as defense counsel contends, that this case overrules *United States v. White* in our Court of Appeals. The motion to suppress is denied.

the scene, may vary greatly in their value and reliability.' Rigid legal rules are ill-suited to an area of such diversity. 'One simple rule will not cover every situation.' *Ibid."* *Illinois v. Gates*, 462 U.S. at 232, 103 S.Ct. at 2329 (footnote omitted).