523 P.2d 523

**The STATE of Idaho, Plaintiff-Appellant,**

v.

**Jerry L. HOBSON, Defendant-Respondent.**

**No. 11159.**

Supreme Court of Idaho.

June 12, 1974.

Rehearing Denied July 3, 1974.

James E. Risch, Pros. Atty., Ada County, David H. Leroy, Asst. Ada. County Pros.

Atty., W. Anthony Park, Atty. Gen., Boise, for plaintiff-appellant.

Ellison M. Matthews, Boise, for defendant-respondent.

McFADDEN, Justice.

Respondent Jerry L. Hobson was arrested for the possession of a derivative of LSD found by the Boise City Police after stopping him in his automobile for investigation. After his arrest the police obtained his consent to search his motel room and found other controlled substances including 46,000 amphetamine pills. The prosecuting attorney filed an information charging the respondent with a felony, illegal possession of amphetamines with the intent to deliver. The respondent moved to suppress the use of the amphetamines as evidence on the grounds that the search of his car and motel room violated his Fourth Amendment right to freedom from unreasonable searches and seizures. The district court granted the respondent's motion to suppress, and the State of Idaho appealed.

Between January 20 and 21, 1971, an anonymous informant called the Boise City Police Department three times and told them that the respondent had in his possession illegal drugs. The informant in his last call described the color, make and location of respondent's vehicle. The police immediately proceeded to this location to investigate. One of the police cars while enroute spotted the respondent alone in his automobile. This police car followed him for a short distance and stopped him with the aid of another patrol car. Three other police cars arrived at the scene and parked to the right of respondent's car.

While a police sergeant examined the respondent's driver's license and automobile registration, another police officer observed three pharmaceutical bottles in the open glove compartment. The police sergeant inquired about the bottles' contents. The respondent replied that they were vitamins and gave one bottle to the sergeant. While the sergeant opened the bottle, the respondent attempted to hide the contents

of one of the remaining bottles. But the sergeant saw this and asked him what he was doing. The respondent then voluntarily surrendered a plastic "baggy" which the sergeant determined to contain a derivative of LSD. This "baggy" supplied the police with probable cause to arrest the respondent for possession of a controlled substance. After the police took him to the police station, the respondent voluntarily consented to a search of his motel room. The search of the motel room produced the amphetamines which is the basis of the information filed against the respondent.

The threshold issue in this case is whether the police by stopping the respondent in his automobile for investigation violated his Fourth Amendment right to be secure from unreasonable searches and seizures. The stop presented the police the opportunity to find contraband in respondent's possession which supplied probable cause for respondent's arrest and search of his motel room. In answering this question we must first determine whether the police arrested the defendant when they initially stopped him. If it was an arrest, then we must examine whether there was probable cause for the arrest. If it was not an arrest, we must determine whether the investigative stop of the respondent was a reasonable intrusion on respondent's Fourth Amendment rights.

The district court in a memorandum decision concluded that the police arrested the defendant when they initially stopped him and hence there was no probable cause for respondent's arrest until *after* the police found the LSD derivative. In summary, the district court concluded that since the arrest was illegal, the arrest invalidated any subsequent search purportedly made as an incident to the arrest, that any evidence seized as a result of the illegal arrest must be suppressed, and that the illegal arrest vitiated respondent's consent to search his motel room.

The State contends that the initial stop was not an arrest but an "investigative stop." The State argues on the basis of State v. Loyd, 92 Idaho 20, 435 P.2d 797

(1967), and I.C. §§ 19–601, 602 that there was an absence of any intent on the part of the police to place the respondent in custody, which is a necessary element of an arrest. The State, in summary, justifies this investigative stop on the basis of the "stop and frisk" doctrine of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The respondent, on the other hand, urges that the police stop of his automobile constitutes an arrest within the terms of State v. Loyd, supra, and I.C. §§ 19–601, 602 and that the police did not have probable cause for an arrest. Respondent argues that the police restrained him and impeded his liberty when they initially surrounded his automobile and that this detention evidences an arrest.

In reviewing this case our purpose is not to question the exclusionary rule. Inasmuch as the State, the respondent, and the district court all rely on State v. Loyd, supra, in determining whether the stop of the respondent was or was not an arrest, we must re-examine that case, especially in light of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), which was decided subsequent to the decision in State v. Loyd, supra.

In State v. Loyd, supra, two police officers were investigating a suspected burglary of the Eagles Lodge in Boise. The two officers observed a sedan with out-of-state license plates driving in the vicinity of the lodge. The officers decided to investigate the vehicle. The car had stopped and one officer noticed one of its occupants leave the car and throw something away. The passenger got back into the car. The officers then stopped the car from leaving, ordered the occupants out and then checked them for weapons. One of the officers shined his flashlight into the interior and noticed an object on the floor partly concealed beneath the front seat. He went around the car, again observed the object, and found it to be a cash box from the Eagles Lodge. The question before the court in that case was primarily whether the trial court erred in refusing to suppress the admission of the cash box as evidence.

This court held that inasmuch as the defendants were under arrest, there was a lawful search and furthermore, that the viewing of the article without trespass was not unlawful. The court stated "[v]iewing what is open and blatant is not a search." 92 Idaho at 23, 435 P.2d at 800.

In light of Terry v. Ohio, the court in State v. Loyd could have held that the officers had sufficient cause to stop the vehicle and interrogate its occupants by reason of the time of night, the fact there was a suspected crime, and the unusual circumstance of a vehicle with foreign license plates driving in the neighborhood. In fact the court pointed out

"Prompt inquiry into suspicious or unusual street action is an indispensable police power in the orderly government of urban communities." 92 Idaho at 23, 435 P.2d at 800.

Along the same line, the United States Supreme Court in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), reaffirmed the concept of an "investigative stop" discussed in Terry v. Ohio, supra:

"The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. * * * A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." Adams v. Wil-

liams, supra, 407 U.S. at 145–146, 92 S. Ct. at 1923.

See Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

■ It is our conclusion that even though State v. Loyd, supra, held that there was an arrest before the officers discovered the cash box, that ruling is inapplicable in the case now before the court.

I.C. § 19–601 defines arrest as follows:

"An arrest is taking a person into custody in a case and in the manner authorized by law * * *."

The critical act in effecting an arrest is placing the person in police custody. Instructive of the legislative intent in defining an arrest in terms of "custody" is the next succeeding section, I.C. § 19–602, which provides:

"An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of an officer."

■ Under I.C. § 19–601 an arrest is a custodial taking, seizure or detention, and we believe that there must be some action or intent evidencing police custody before an arrest occurs. In the instant case the police sergeant who first approached the respondent asked for his driver's license which was a legitimate request under I.C. § 49–319. This request did not evidence any intent to place the respondent in police custody at that time, even though a number of other officers were present. On the basis of the facts presented in this case we conclude that the district court erred in deciding that the police arrested the defendant.[1] See I.C. § 19–603. See also, United States v. Hensley, 374 F.2d 341

---

[1]. In Fuller v. United States, 132 U.S.App. D.C. 264, 407 F.2d 1199, 1207 (1968), Judge Leventhal stated:

"Detention of a witness for the purpose of asking question is not necessarily an arrest, at least if the detention is brief enough. Even a mere stopping, however, may constitute an arrest if the officer's purpose is to assert custody over the individual in connection with a crime, a purpose he may be more likely to set forth in order to justify a simultaneous search * * * Even where the officer denies that he intended to make an arrest his actions may sufficiently manifest an arrest * * *. Where the officer goes to the point of asking the person to accompany him to a police station or similar place, that fact alone may be sufficient * * *."

(6th Cir.1967); Shorey v. Warden, 401 F. 2d 474 (4th Cir.1968); Coates v. United States, 134 U.S.App.D.C. 97, 413 F.2d 371 (1969); State ex rel. Flournoy v. Wren, 108 Ariz. 356, 498 P.2d 444 (Ariz.1972); State v. Goudy, 479 P.2d 800 (Haw.1971); Battles v. State, 459 P.2d 623 (Okla.Cr. 1969); State v. Lewis, 80 N.M. 190, 454 P.2d 360 (1969). See also, Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L. Ed.2d 977 (1964); Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966); Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L. Ed.2d 311 (1969); United States v. Hall, 421 F.2d 540 (2d Cir.1969).

█ Having concluded that the police did not arrest the respondent when they initially stopped him, there still remains for resolution whether that stop was an unreasonable invasion of his Fourth Amendment rights. The State argues that such stops are reasonable because the United States Supreme Court in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), approved the use of stops of persons for investigation upon less probable cause than is necessary for an arrest.[2]

█ The starting place to determine whether the stop was reasonable or not is the exact language of the Fourth Amendment:

> "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable

cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." (Emphasis supplied.)

The Fourth Amendment "protects people, not places." Katz v. United States, 389 U.S. 347, 351, 88 S.Ct. 507, 511, 19 L.Ed.2d 576 (1967), and it forbids "not all searches and seizures, but unreasonable searches and seizures." Elkins v. United States, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446, 4 L. Ed.2d 1669 (1960).

The question then arises, did the police unreasonably detain the respondent within the meaning of the term seize in the Fourth Amendment when they stopped him in his automobile. The Supreme Court in Terry v. Ohio, supra, wrote that "not all personal intercourse between policemen and citizens involves 'seizures' of persons." 392 U.S. 19, n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889. The Court also stated "whenever a police officer accosts an individual and restrains his freedom to walk away, he has seized that person." 392 U.S. 16, 88 S.Ct. 1877. And the restraint of liberty necessary to find the "seizure" of an individual requires "physical force or show of authority." 392 U.S. 19, n. 16, 88 S.Ct. 1879.[3] In this case the police not only stopped the respondent in his car but surrounded him in it as well. We believe on the basis of Terry v. Ohio and Adams v. Williams that the police in this case in fact did "seize" or detain the respondent within the meaning of "seizure" in the Fourth Amendment. See, United States v. Harflinger, 436 F.2d 928 (8 Cir. 1970).

2. An excellent discussion of the competing interests between the individual citizen, the police, and the public in nonarrest stops appears in "Nonarrest Automobile Stops: Unconstitutional Seizures of the Person," 25 Stan.L.Rev. 865 (1973). Compare, Traynor, "Mapp v. Ohio at Large in the Fifty States," 1962 Duke L.J. 319, 333–334, with "Report of the Committee on Penal Law and Criminal Procedure of the New York State Bar Ass'n," February 25, 1964.

3. To the present time the Supreme Court has expressly not sanctioned investigative stops of motorists. Besides *Terry* the Supreme Court

approved the investigative stop and frisk of nonmotorists recently in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). But see, Justice Burton's concurrence in Brinegar v. U. S., 338 U.S. 160, 179, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949), Justice Clark's dissent, joined by Chief Justice Warren in United States v. Henry, 361 U.S. 98 at 106, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); Justice Black's dissent in Whitely v. Warden, 401 U.S. 560 at 573, 91 S.Ct. 1031, 28 L.Ed. 2d 306 (1971), and Justice Blackmun's dissent at 401 U.S. 575. These justices all suggest that a car may be stopped upon a reasonable suspicion of criminal activity.

We now must consider whether the investigative stop was an unreasonable seizure of respondent's person. First, the information underlying the initiation of the investigative stop must possess specificity and some indicia of reliability. In this regard the officer's conduct must be judged against an

"Objective standard: would the facts available to the officer at the moment of the seizure or search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? [Citations omitted.] Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches * * *. [Citations omitted.] And simple 'good faith on the part of the * * * officer is not enough' * * *. If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be 'secure in their persons, houses, papers and effects,' only in the discretion of the police." Terry v. Ohio, supra, 392 U.S. at 22, 88 S.Ct. at 1880.

Compare Harlan, J. (concurring opinion), Sibron v. New York, 392 U.S. 40, 77–78, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). But see, Lafave, "'Street Encounters' and the Constitution: Terry, Sibron, Peters, and Beyond," 1967 Mich.L.Rev. 40, 64. Next, not only the grounds for the stop but the conduct of the stop must also be reasonable. Thus, investigative stops must not be

the acts of harrassment or unwarranted force.[4] 392 U.S. at 27, 88 S.Ct. 1889.

The anonymous informant in this case through several calls supplied specific information including the respondent's name, color and make of his car, its location, and his possession of controlled substances. But see, Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Spinelli v. U. S., 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

Under the facts of this case it is our conclusion that this stop was within the ambit of a *reasonable detention* of a person sanctioned by the Fourth Amendment. See, Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1973).[5]

The order of the trial court suppressing evidence obtained in the search of respondent's motel room is reversed and the cause remanded for further proceedings.

SHEPARD, C. J., and DONALDSON, J., concur.

McQUADE, Justice (dissenting).

The trial court held that the stopping and questioning of Hobson was an arrest and that the police did not possess sufficient information about Hobson's illegal drug activities at the time of the stop to meet the constitutional probable cause requirement for an arrest. The trial court granted Hobson's motion to suppress the use of the amphetamines as evidence on the ground that they were the fruit of an

---

4. Justice Harlan in his concurring opinion in *Terry* at 392 U.S. 32–33, 88 S.Ct. 1889, criticized the Court for failing to clarify the propriety of the stop rather than the frisk. The failure of the Supreme Court to address itself specifically to the investigative stop and the standards necessary for the police to act is one of the principal shortcomings of Terry and the subsequent cases. See Sibron v. New York, 392 U.S. 40, 61, 88 S.Ct. 1889, 20 L.Ed. 2d 917, n. 20 (1968).

5. It has been suggested that in attempting to define the grounds for an investigative stop that possessory crimes like narcotics be excluded. For example, investigative stops would be permissible in crimes against persons

and their property which are frequently attended by violence such as robbery, murder, manslaughter, rape and larceny. LaFave, "'Street Encounters' and the Constitution: Terry, Sibron, Peters and Beyond," 1957 Mich.L.Rev. 40, at 65–67. Judge Friendly (now chief judge) articulated the dangers inherent to investigative stops for possessory crimes in his dissenting opinion in Adams v. Williams, 436 F.2d 30, 38 (2d Cir. 1970).

"To begin, I have the gravest hesitancy in extending Terry to crimes like the possession of narcotics * * *. There is too much danger that, instead of the stop being the object and the projective frisk an incident thereto, the reverse will be true."

unlawful arrest. The majority reverses the trial court on the basis that the stopping of Hobson was not an arrest, but a constitutional investigatory stop which requires something less than probable cause. The majority bases its conclusion that the stop was constitutional on the recent Supreme Court cases of Terry v. Ohio[1] and Adams v. Williams.[2] The decisions of the Supreme Court in the areas of criminal procedure and protection of constitutional rights establish only the minimum standards of protection, and the states are free to adopt higher standards of protection.[3] A reading of Terry v. Ohio and Adams v. Williams reveals that they do not set forth any reasonably articulable test to guide the police in street encounters. By adopting the Supreme Court's cases, the majority opinion does not set forth any guidelines for the police to follow in street encounters which will result in a large number of appeals on this issue. This Court should attempt to establish a clear test to guide the police in street encounters rather than adopting the Supreme Court's decisions on a wholesale basis.

Although the majority adopts Terry v. Ohio and Adams v. Williams, it fails to follow them in this action. The conduct of the police failed to even meet the minimum standards set forth by the Supreme Court and therefore, the trial court must be affirmed.

In Terry v. Ohio, the Supreme Court ruled for the first time on the constitutionality of investigatory stops and frisks. The case involved a police officer with thirty-nine years of experience who observed the following:

"[T]wo men hover about a street corner for an extended period of time, at the end of which it becomes apparent that they are not waiting for anyone or any-thing; where these men pace alternately along an identical route, pausing to stare in the same store window roughly 24 times; where each completion of this route is followed immediately by a conference between the two men on the corner; where they are joined in one of these conferences by a third man who leaves swiftly; and where the two men finally follow the third and rejoin him a couple of blocks away." [4]

After the above observations the officer confronted the individuals, identified himself and asked them their names. Upon becoming fearful for his own safety he grabbed one of the suspects and discovered a concealed weapon in a pat-down search. In Terry v. Ohio, the Supreme Court was mainly concerned with the constitutionality of the search not the stop. The Court held,

"We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him." [5]

Although the Terry case is not particularly artfully drafted, it appears that the test for a constitutional stop is that the conduct of the suspects would lead a reasonable man

---

1. 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

2. 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972).

3. Cooper v. California, 386 U.S. 58, 87 S.Ct. 788, 17 L.Ed.2d 730 (1966) ; People v. Kelly,

14 Crim.L.Rptr. 1089 where the New York County Criminal Court held that it would not follow the recent Supreme Court cases dealing with searches incident to a traffic arrest.

4. Id., 392 U.S. at 23, 88 S.Ct. at 1881.

5. Terry v. Ohio, supra, 30, 88 S.Ct., at 1884.

to conclude that criminal activity is afoot. In applying the reasonable man test the Court warned,

"The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate? Cf. Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Beck v. Ohio, 379 U.S. 89, 96–97, 85 S.Ct. 223, 13 L.Ed.2d 143 (1964). Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches, a result this Court has consistently refused to sanction. See, *e. g.,* Beck v. Ohio, *supra*; Rios v. United States, 364 U.S. 253, 80 S.Ct. 1431, 4 L.Ed.2d 1688 (1960); Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). And simple ' "good faith on the part of the arresting officer is not enough." . . . If subjective good faith alone were the test, the protections of the Fourth Amendment would evaporate, and the people would be "secure in their persons, houses, papers, and effects," only in the discretion of the police.' Beck v. Ohio, *supra,* at 97, 85 S.Ct. 223." [6]

There was also need for immediate action in the *Terry* case, because the officer believed that he was witnessing the beginning of an armed robbery and weapons were found on the suspects.

The question for this Court in this action if it adopts the Supreme Court's stop and frisk rule is whether the police offi-cers possessed sufficient information that would lead a reasonable man to conclude that "criminal activity may be afoot." The only information that the police possessed concerning Hobson was through an anonymous phone call in which Hobson was named, the color, make and location of his automobile was described, and he was accused of possessing illegal drugs. On the basis of this information alone, without further investigation or apparent need for an immediate arrest, five parol cars located Hobson in a different part of Boise than stated in the tip, and pulled him over for questioning. Contrary to *Terry,* this is not a case in which the police became suspicious about a person by observing his conduct because the only information they had was from an anonymous tipster and the only part of that information that involved criminal activity was the bald allegation of possession of illegal drugs. Also contrary to *Terry,* there is nothing in the record to indicate that immediate action was necessary by the police. On the basis of the majority opinion anyone can call the police, describe an automobile and its owner and allege possession of illegal drugs with the result that the described person will be pulled over, required to identify himself, interrogated about criminal behavior, and his automobile subjected to a visual search. The majority sets up an excellent means of harassment. Because of the lack of any basis upon which a detached reasonable man could conclude that Hobson was involved in criminal activity, the case of Terry v. Ohio does not support the result reached by the majority.

The second Supreme Court case relied on by the majority is Adams v. Williams.[7] In that case a stop and frisk based on a tip was held constitutional. The facts of the case were that the police officer was on patrol in a high-crime area of Bridgeport, Connecticut. A person known to the officer informed him that an individual seated in a nearby automobile was carrying narcotics and had a gun at his waist. The of-

---

6. *Id.*, at 21–22, 88 S.Ct. at 188.

7. *Supra,* note 2.

ficer went over to the car and ordered the occupant to get out. Instead, the occupant rolled down the window and the officer reached in and removed the gun. The arrest for possession of the gun was upheld. In considering the reasonableness of the officer's actions in relationship to the information he possessed, the Court stated,

"The informant was known to him [the officer] personally and had provided him with information in the past. *This is a stronger case than obtains in the case of an anonymous telephone tip.* The informant here came forward personally to give information that was immediately verifiable at the scene. Indeed, under Connecticut law, the informant might have been subject to immediate arrest for making a false complaint had Sgt. Connolly's investigation proved the tip incorrect. Thus, while the Court's decisions indicate that this informant's unverified tip may have been insufficient for a narcotics arrest or search warrant, see, *e. g.,* Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969) ; Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), the information carried enough indicia of reliability to justify the officer's forcible stop of Williams." (Emphasis added).[8]

Clearly this action is not controlled by the *Williams* case because this action involves an anonymous telephone tip which was impliedly rejected by the Supreme Court as a basis for a stop and frisk.

The Fourth Amendment of the United States Constitution and art. 1, § 17 of the Idaho Constitution guarantee the right of the people to be secure against unreasonable seizures. The majority acknowledges that the stopping of Hobson was a seizure and based on the Supreme Court's analysis adopted by the majority, it was an unreasonable seizure.

It is unfortunate that the evidence in this action must be suppressed because it appears that Hobson was involved in illegal drugs. Had the police conducted an investigation to corroborate the anonymous tip before seizing Hobson, it is likely that this action would not be before this Court. The police must be given authority to investigate criminal activity, but there are constitutional limits on the scope of the investigative power. In conducting this action, this Court must look beyond the facts of this case to the impact of its ruling on the general public. In this case the anonymous tip led to a person involved in illegal drugs, but how many times will innocent citizens be stopped and interrogated about criminal involvement? This Court only sees the cases in which criminal complaints are filed and does not see the cases where citizens were stopped and questioned and generally harassed and no evidence of criminal conduct discovered. It must be remembered that rules adopted by this Court will be applied to both the guilty and the innocent.

By guaranteeing freedom from unreasonable seizures, the Idaho and United States Constitutions recognize the citizen's right to be free from arbitrary governmental interference. Stopping and questioning a citizen with five patrol cars based on an uncorroborated anonymous telephone tip is arbitrary and unreasonable interference with Hobson's right to be let alone, and therefore unconstitutional.

BAKES, Justice (dissenting).

I would affirm the action of the trial court. This case appears to be one in which the rights of society to enforce its laws and to punish violators, and the rights of a citizen to be free from unreasonable searches and seizures appear to be in near equipoise. Therefore, the presumption that the trial court is correct should prevail, and the conflict should be resolved in favor of upholding the constitutional rights of the citizen to be free from unreasonable searches and seizures.

8. 407 U.S., at 146–147, 92 S.Ct., at 1923.