Appellant, Vannessa Rose White, was indicted in a two-count indictment for possession of marijuana and possession of cocaine, in violation of § 20-2-70, Code of Alabama 1975. Appellant pleaded not guilty to the charges in the indictment. After a hearing and subsequent denial of her motion to suppress, appellant pleaded guilty to the charges, reserving the right to raise, on appeal, the issue of the trial court's denial of her suppression motion. She was sentenced to two years in the penitentiary. The sentence was suspended, and appellant was placed on two years' supervised probation.
On April 22, 1987, at approximately 3:00 p.m., Corporal B.H. Davis received a phone call from an anonymous person, stating that Vannessa White would be leaving 235-C Lynwood Terrace Apartments at a particular time in a brown Plymouth station wagon with the right taillight lens broken and that she would be going to Dobey's Motel and would be in possession of about an ounce of cocaine inside a brown attache case. After the call, Davis and his partner, Corporal P.A. Reynolds, proceeded to Lynwood Terrace Apartments to keep the 235 building under surveillance. The officers saw a brown Plymouth station wagon with a broken right taillight in the parking lot in front of the 235 building. The officers observed appellant leave the 235 building, carrying nothing in her hands, and enter the station wagon. The officers followed appellant to the Mobile Highway, the highway on which Dobey's Motel is located. She took the most direct route possible toward Dobey's Motel. Reynolds then contacted a patrol unit and instructed the officers to stop the vehicle. The vehicle was stopped about 4:18 p.m. As the officers approached the vehicle, they observed that the car was full of clothes and that it looked as if appellant was in the process of moving. Davis asked appellant to step to the rear of the vehicle, where he informed her that the reason she had been stopped was that she was suspected of carrying cocaine in the vehicle and he asked her if they could look for cocaine. Appellant told the officers that they could look. The officers proceeded to search the car and found a brown, locked attache case. Davis testified that Reynolds saw the briefcase, he believed, on the backseat; the patrolman, who stopped appellant's vehicle, testified that, when he approached her vehicle, he observed the briefcase on the front seat, next to the driver. Upon request, appellant gave the officers the combination to the lock, and they opened the case. Inside the case, they found marijuana, empty plastic bags, and small manila envelopes. After the marijuana was found, Davis placed appellant under arrest and informed her of her Miranda rights, which she stated she understood. At police headquarters, appellant told the officers that "she had forgotten that the marijuana was in the briefcase and that she used to sell it and had not done so in a while." When appellant was being processed, the officers found three milligrams of cocaine in her purse, and appellant stated that "she used that to replace cocaine that she took from packages that she would obtain for other individuals."
Appellant seeks review of the trial court's denial of her motion to suppress. The specific issue that merits consideration here is, To what degree may a police officer rely on an anonymous tip in forming the reasonable, articulable suspicion necessary to justify an investigatory stop? SeeTerry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889
(1968). *Page 1076 
A valid investigatory stop does not require probable cause.Id.
 "The officer need only be able to articulate specific facts and inferences that lead to a reasonable suspicion of criminal activity. Terry, 392 U.S. at 21 [88 S.Ct. at 1879'80]. . . . The degree of reasonable suspicion necessary to make a stop was articulated in United States v. Cortez, 449 U.S. 411, 417-18 [101 S.Ct. 690, 695, 66 L.Ed.2d 621] . . . (1981): '(B)ased upon the whole picture the determining officer must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' "
Crawley v. State, 440 So.2d 1148, 1149-50 (Ala.Cr.App. 1983).
 "The idea that an assessment of the whole picture must yield a particularized suspicion contains two elements, each of which must be present before a stop is permissible. First, the assessment must be based upon all of the circumstances. The analysis proceeds with various objective observations, information from police reports, if such are available, and consideration of the modes or patterns of operation of certain kinds of lawbreakers. From these data, a trained officer draws inferences and makes deductions — inferences and deductions that might well elude an untrained person.
 "The process does not deal with hard certainties, but with probabilities. . . . [T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.
 "The second element contained in the idea that an assessment of the whole picture must yield a particularized suspicion is the concept that the process just described must raise a suspicion that the particular individual being stopped is engaged in wrongdoing. Chief Justice Warren, speaking for the Court in Terry v. Ohio, supra, said that '[t]his demand for specificity in the information upon which police action is predicated is the central teaching of this Court's Fourth Amendment jurisprudence.' Id., at 21, n. 18 [88 S.Ct. at 1880, n. 18] (emphasis added). [Other citations omitted.]"
United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695,66 L.Ed.2d 621 (1981).
"[A]s a practical matter, courts have evidenced confusion as to whether an anonymous tip can itself support a finding of reasonable suspicion." Note, Stop and Frisk in New York:Fleeing Suspects and Anonymous Tips, 12 Fordham Urb.L.J. 383, 401-02 (1984) (footnote omitted). See also Note, Stop and FriskBased Upon Anonymous Telephone Tips, 39 Wn. Lee L.Rev. 1437 (1982). This confusion has been aggravated by the fact that the Supreme Court has twice denied certiorari on the issue of whether an anonymous tip can establish reasonable suspicion for an investigatory stop, see White v. United States,454 U.S. 924, 102 S.Ct. 424, 70 L.Ed.2d 233, 235 (1981) (White, J., joined by Justice Brennan and Justice Marshall, dissenting from denial of certiorari), denying cert. to 648 F.2d 29 (D.C. Cir. 1981), and Jernigan v. Louisiana, 446 U.S. 958,100 S.Ct. 2930, 64 L.Ed.2d 816 (1980) (White, J., joined by Justice Brennan and Justice Marshall, dissenting from denial of certiorari), denying cert. to 377 So.2d 1222 (La. 1979). The only proclamation by the Supreme Court pertaining to anonymous tips in a stop and frisk situation is dicta in Adams v.Williams, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923,32 L.Ed.2d 612 (1972). There, in addressing the question of whether a known informant's tip can supply the reasonable suspicion necessary for a Terry stop and frisk, the Court commented that the tip under review was a stronger case justifying the stop than the case of an anonymous telephone tip. Id. In dissenting on the denial of certiorari in Jernigan v. Louisiana, Justice White stated the following:
 "We have not directly decided whether an anonymous tip may furnish reasonable suspicion for a stop and frisk. We have emphasized the specificity of the information provided, the independent corroboration by the police officer, and the danger to the public. See, e.g., Adams [v. Williams, 407 U.S. 143 [92 S.Ct. 1921, 32 L.Ed.2d 612] . . . (1972)]; *Page 1077 Draper v. United States, 358 U.S. 307
[79 S.Ct. 329, 3 L.Ed.2d 327] (1959). But in the decided cases, these factors were not the only indicia of reliability. The informers in Adams and Draper were known to the officer and were known to have provided reliable information in the past. The same cannot be said of an anonymous tipster.
 "Arguably, the decision of the Louisiana Supreme Court is inconsistent with our prior cases which require that reasonable suspicion be based on a sufficiently reliable informer's tip. I would grant certiorari for this reason and also because the reliability of an anonymous or unidentified tipster is an issue that has divided the Federal Courts of Appeals. [Citations omitted.] The state courts are similarly divided."
446 U.S. at 959-60, 100 S.Ct. at 2931. In his dissent inWhite, Justice White noted the following:
 "While the determination of reasonable suspicion is heavily dependent on the specificity of the information, the amount of verification, and the urgency of a particular situation, the conflicting results cannot be explained as accounting for different factual patterns."
454 U.S. at 926, n. 2, 102 S.Ct. at 426, n. 2. We believe that the inconsistent decisions of the various circuits and states are due, in part, to the facts that there is no absolute rule and that most appellate courts favor "individualized analysis of the credibility of the tip," United States v. White,648 F.2d at 41.
Thus, we begin our discussion with only one certainty: we have been offered no clear guidance, by federal or state caselaw, on the question before us. However, we find guidance in the following analysis of the stopping-for-investigation situation based upon information from an informant:
 "[T]he central issue as to this . . . category is whether the informant's information is so reliable and complete that it makes past, present or pending criminal conduct sufficiently likely to justify a stopping of the designated person for investigation.
 "[This situation] reached the Supreme Court in Adams v. Williams. . . . Except for [twice] referring to 'indicia of reliability' as the test, Justice Rehnquist's adumbrated opinion in Adams
sheds no further light on exactly what it is that will make an informer's word sufficient for a stop but not adequate for an arrest. . . .
 ". . . under the two-pronged test of Aguilar v. Texas[, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723
(1964),] information from an informant was deemed to supply that probable cause needed for a full arrest or issuance of a search warrant only if there was revealed (i) the underlying circumstances showing reason to believe that the informant is a credible person, and (ii) the underlying circumstances showing the basis of the conclusions reached by the informant. The first of these two requirements could be met by showing that this informant had previously given accurate information or that his statement was against his own penal interest. As for the second, it could be directly established by the informer indicating that he has personal knowledge or by his specifying some other credible source, but if this is not done it will suffice if the informant has given so many details that it may be inferred that he obtained his information in a reliable way. Yet another way of satisfying the first requirement (and, perhaps, the second as well) was by corroboration of a great many details from the informer's story. But in Illinois v. Gates [, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)], the Supreme Court decided to 'abandon the "two-pronged test" in favor of a much more ambiguous 'totality of the circumstances analysis.' It is thus less clear now than it once was just when an informant's information will suffice to show probable cause for a full arrest or search. At least indirectly, Gates appears to have likewise created greater uncertainty on the issue discussed here.
 "However, the Court in Gates cautioned that it had not abandoned entirely the teachings of Aguilar
and its progeny; *Page 1078 
it is still true 'that an informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in determining the value of his report.' Consequently, it is still sensible after Gates, in trying to ascertain in informant cases 'the degree of relaxation from the probable cause standard entailed by the Williams-Terry standard of reasonable cause to stop,' to examine those particular factors. That is, it remains useful to ask just how differently those factors weigh in the determination when the issue concerns grounds to stop rather than grounds to arrest or search."
3 W. LaFave, Search and Seizure § 9.3(e) (2d ed. 1987) (footnotes omitted). In specifically addressing the particular problem before us, anonymous informers, the commentator continued as follows:
 "Because in Adams the Court asserted it was dealing with 'a stronger case than obtains in the case of an anonymous telephone tip,' the lower courts have been most ready to hold unreasonable a stop based upon information received from an anonymous informant. But stops based in large part at least upon the allegations of unknown informers have sometimes been upheld. One type of situation is that in State v. Hobson, [95 Idaho 920, 523 P.2d 528 (1974),] where an anonymous telephone caller told the police that defendant had drugs in his possession. Because the caller had described the color, make and location of defendant's car, confirmed by officers before the stop, the court held there were grounds for the stop because of this corroboration. But, though it is not to be doubted that corroboration will sometimes be so strong (especially when it involves viewing suspicious conduct) as to elevate information from even an anonymous informer to the level needed to justify a stop, the result in Hobson is in error. As a dissenting judge observed:
 " 'On the basis of the majority opinion anyone can call the police, describe an automobile and its owner and allege possession of illegal drugs with the result that the described person will be pulled over, required to identify himself, interrogated about criminal behavior, and his automobile subjected to a visual search.'
 "Even the lesser intrusion of a stopping for investigation should not be permitted when the so-called corroboration is of nothing more than 'information available to any passerby or resident on the street,' for in such instances the facts do not 'demonstrate that the anonymous informant had any special familiarity with the affairs of' the suspect."
Id. (footnotes omitted).
We begin our analysis of the instant tip with an expression of agreement with the commentator that the factors ofAguilar and its progeny are still "highly relevant." We also note that the weight of each factor cannot be set by a strict across-the-board rule, but rather depends on the totality of the circumstances of each case. However, we do declare the following two principles in determining the presence of the factors. First, corroboration of the details of the anonymous informer's tip — even innocent details — may establish the informant's veracity. See Note, Stop and Frisk Based UponAnonymous Telephone Tips, supra, at 1450-51. We strongly caution, however, that the details corroborated should be impressive, as to number and specificity, under the particular circumstances, if corroboration is to be utilized to establish the tipster's credibility. This brings us to our second principle: detail in the anonymous tip can support the inference that the informant has an adequate basis of knowledge. Id. at 1449-50. However, the detail must demonstrate that the anonymous informant had special familiarity with the affairs of the suspect. 3 W. LaFave, supra, at § 9.3(e), p. 484. For an example of cases wherein a detailed tip, which proved through corroboration to be accurate in all innocent details, can furnish the reasonable suspicion necessary for aTerry stop, see White v. United States.
In the instant case, we find that the tip exhibits no "indicia of reliability." The police officers knew nothing about the informer; Davis testified that he simply assumed *Page 1079 
that the informant was a concerned citizen. The tipster offered no information tending to show that he was a credible person. Moreover, we cannot resort to corroboration of details to find the informer to be reliable, for the details corroborated consisted of information that could have been obtained by almost anyone, and the details were not significantly corroborated. The informer gave no physical description of the named person and, Davis testified, he did not know Vannessa White. Thus, the officers did not even corroborate that it was Vannessa White who emerged from the 235 building and got into the described vehicle. The officers had no way of knowing if appellant was the woman to whom the informer referred. The officers also failed to corroborate that appellant left from apartment 235-C. In addition, from the record, we cannot hold that they corroborated the particular time the informer said White was to leave, for no specific time, stated by the informer, is revealed in the record and there is no testimony that she left at the time or near the time specified by the informer. The officers also failed to corroborate that appellant was in possession of a brown attache case as she left the apartment building or that the attache case was in plain view in the described vehicle (which it was later discovered to be). Appellant's destination was insufficiently corroborated; the officers merely corroborated that she was traveling in the direction of the designated destination. Finally, the officers viewed absolutely no suspicious conduct by appellant. Cf.Stanfield v. State, 529 So.2d 1053, 1058 (Ala.Cr.App. 1988) (wherein, in holding that the necessary probable cause was not established by a known informant's tip which revealed, in part, that the suspect was from the Montgomery area and would be arriving at a specific Tuscaloosa apartment around 7:00, the court noted that "the degree of suspicion which attached to his arrival from Montgomery at a given apartment in Tuscaloosa at 7:00 p.m. was virtually nil, and his itinerary was not highly suggestive of any criminal activity") (emphasis in original).
In regard to the tipster's basis of knowledge, we note that the tipster offered no information to suggest his source of the relayed tip. Moreover, the tip does not contain enough detail to support the inference that the informer was not relying upon mere rumor, but upon his first-hand knowledge or some other dependable manner. Most of the information is the sort readily available to the public and, thus, it is more difficult to infer that the tipster conveying this kind of information is so acquainted with the named individual that he knows of her involvement with drugs. Moreover, we know nothing of the basis of the tipster's conclusion that Vannessa White was in possession of cocaine.
Thus, we are confronted with a vaguely corroborated, anonymous tip consisting mostly of easily known details. The police observed a woman leave the general area of the 235 building, enter a described vehicle, and drive in the general direction of a specified location.
 "In this case, the corroboration was so slight that it created no justification for believing that the informant was 'relying on something more substantial than a casual rumor.' Spinelli [v. United States], 393 U.S. [410,] 416, 89 S.Ct. 584, 589, 21 L.Ed.2d 637] . . . [(1969)]. Reasonable suspicion requires more than this minimal corroboration of innocent details. See United States v. DeVita, 9 Cir. 1975, 526 F.2d 81 (per curiam)."
United States v. McLeroy, 584 F.2d 746, 748 (5th Cir. 1978).
Although Alabama caselaw on this subject is sparse, we find some guidance. In Stanfield v. State, the police " 'received some information that a fellow named "Ron" would be delivering a quantity of cocaine to 20-W Skyland Apartments, the residence of a Mr. Selman and Mr. Krebs; and further that this Ron was from the Montgomery area,' and 'that he would be in sometime around 7:00 o'clock.' " 529 So.2d at 1055. A man arrived in a car with a Montgomery license plate at the designated apartment around 7:00 p.m., while the police were executing a search warrant for the apartment. Id. The man identified himself as "Ron." Id. After finding that *Page 1080 
the tip, which failed to exhibit veracity or basis of knowledge, and corroboration of all of its innocent details did not provide probable cause to search the appellants' person,id., at 1058, the court found the following:
 "[The officers] did, however, have authority under Terry v. Ohio, 392 U.S. 1 [88 S.Ct. 1868, 20 L.Ed.2d 889] . . . 1968), to detain the defendant briefly for questioning. See State v. Calhoun, 502 So.2d [795,] 805-07. [(Ala.Cr.App.), aff'd, [in part, rev'd in part] 502 So.2d 808 (Ala. 1986)]. Although the tip and the corroboration of its predictions did not supply probable cause, it did provide the officers with a reasonable suspicion that defendant might be engaging in criminal activity. See Adams v. Williams, 407 U.S. 143
[92 S.Ct. 1921, 32 L.Ed.2d 612] . . . (1972). The defendant's association with the apartment for which there was probable cause to search for contraband sufficed for a Terry stop. . . ."
Id. We consider the details corroborated in Stanfield, along with the appellant's arrival at an apartment being properly searched pursuant to a warrant, to clearly distinguishStanfield from the instant case.
In rejecting the instant tip, we are attracted to the following commentary adopted in 3 W. LaFave, supra, at § 9.3(e), pp. 478-79, from The Supreme Court, 1971 Term, 86 Harv.L.Rev. 50, 178 (1972):
 "Probable cause is determined both by the quantum and content of the information an officer possesses and by the degree of its reliability. The two are nevertheless distinct concepts and a case can certainly be made that the standard of cause to stop should be less than probable cause only in the sense that the officer may stop on less or different information than probable cause would require and not in the sense that he may act on information that is received in a manner less reliable than probable cause would require. Terry
is authority for a relaxed standard only in the former sense, for Terry's Officer McFadden acted upon presumptively reliable personal information." (Emphasis in The Supreme Court, 1971 Term.)
Here, the stop cannot be supported by specific and articulablereliable facts raising a reasonable suspicion that appellant was engaged in wrongdoing. We reiterate that "[t]his demand for specificity in the information upon which police action is predicated is the central teaching of [the United StatesSupreme] Court's Fourth Amendment jurisprudence." Terry,392 U.S. at 21, n. 18, 88 S.Ct. at 1880, n. 18 (emphasis added).
 "[C]ourts still retain their traditional responsibility to guard against police conduct which is overbearing or harassing, or which trenches upon personal security without the objective evidentiary justification which the Constitution requires. When such conduct is identified, it must be condemned by the judiciary and its fruits must be excluded from evidence in criminal trials."
Id. at 15, 88 S.Ct. at 1876 (emphasis added). Because appellant was illegally detained when she gave her consent to search, the marijuana from the briefcase and the cocaine from her purse are fruits of an unconstitutional detention; thus, appellant's motion to dismiss should have been granted.
We reverse and render appellant's conviction with two concluding thoughts. First, we reiterate that our decision here is based on an individualized evaluation of the particular tip in light of the totality of the circumstances. Second, we wholeheartedly concur in the following:
 "The number and variety of anonymous tip cases is endless. None are directly on point; each can be distinguished. The question whether an anonymous tip corroborated only by observation of innocent details justifies a Terry stop is a live and disputed one."
United States v. White, 648 F.2d at 43.
REVERSED AND RENDERED.
All Judges concur. *Page 1081