550 So.2d 1081 (1989)
Ex parte State of Alabama.
(Re Vanessa Rose WHITE
v.
STATE of Alabama).
88-1237.
Supreme Court of Alabama.
September 22, 1989.
Don Siegelman, Atty. Gen., and Stacey S. Houston, Asst. Atty. Gen., for petitioner.
Dennis Pierson, Montgomery, for respondent.
ALMON, Justice.
WRIT DENIED.
HORNSBY, C.J., and JONES, SHORES, ADAMS, HOUSTON and KENNEDY, JJ., concur.
MADDOX and STEAGALL, JJ., dissent.
MADDOX, Justice (dissenting).
With all due deference to the members of this Court and the Court of Criminal Appeals, the opinion of the Court of Criminal Appeals appears to me to be an effort to "refine and elaborate the requirements of `reasonable suspicion' in this case [and create] unnecessary difficulty in dealing with one of the relatively simple concepts embodied in the Fourth Amendment."[1] In my opinion, the decision of the Court of Criminal Appeals will severely cripple law enforcement investigations of criminal activity based on information furnished by a "citizen's tip" and will have a chilling effect on the right of police officers to investigate reports of criminal activity called in by citizens.[2]
*1082 This is a case of first impression, involving an issue of national concernthe right of police, relying on an anonymous tip, to make an investigatory stop of an automobile. Because of the importance of this issue, this Court should at least grant the writ of certiorari and review the holding of the Court of Criminal Appeals, which I believe is wrong. The Court of Criminal Appeals' opinion is admittedly based upon that court's application of the old, discarded Aguilar[3] standard, which the Supreme Court of the United States has specifically said was "hypertechnical and divorced from `the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" Massachusetts v. Upton, 466 U.S. 727, 732, 104 S.Ct. 2085, 2087, 80 L.Ed.2d 721 (1984). (Emphasis added.) Also, in considering this case, the Court of Criminal Appeals was without the benefit of the latest expression of the United States Supreme Court in United States v. Sokolow, ___ U.S.___, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
The Court of Criminal Appeals compounds its error by citing the conclusions of a "legal technician,"[4] who bases his position upon a dissenting opinion from an Idaho case decided 10 years before Upton was decided, and 15 years before Sokolow was decided.[5]
Even more troubling is the reliance by the Court of Criminal Appeals upon a dissenting opinion in Jernigan v. Louisiana, 446 U.S. 958, 100 S.Ct. 2930, 64 L.Ed.2d 816 (1980). In the Jernigan dissent, the dissenting Justice merely stated that he would grant certiorari because the federal and state courts were divided on the issue of whether an anonymous tip may furnish reasonable suspicion for a stop and frisk. In my opinion, the Supreme Court, just one year after Jernigan, set out the test for a "stop and frisk" case in United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981), a case cited, but not followed, by the Court of Criminal Appeals in its opinion, White v. State, 550 So.2d 1074, 1076 (Ala.Crim.App.1989). The Supreme Court said in Cortez:
"The process does not deal with hard certainties, but with probabilities.... [T]he evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."
449 U.S. at 418, 101 S.Ct. at 695.
Even a cursory reading of the opinion of the Court of Criminal Appeals shows that that court "weighed [the evidence] in terms of [a] library analysis by scholars," rather than "as understood by those versed in the field of law enforcement," thereby refusing to follow the guideline set out in Cortez. The Court of Criminal Appeals has obviously applied a "hypertechnical" examination of the facts, and has dealt in "possibilities" rather than "probabilities."[6]
*1083 It is unfortunate, in my opinion, that the Court of Criminal Appeals has, in effect, resurrected the Aguilar standard in a "stop and frisk" setting by citing a dissenting opinion to support its conclusion, and engaging in the "library analysis" condemned by Cortez, supra.
The "hypertechnical" approach called for in Aguilar was specifically abandoned by the United States Supreme Court in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), in search and seizure cases, where probable cause is required, and in that case a "totality of the circumstances" test was established. In Gates, the Court stated:
"[W]e conclude that it is wiser to abandon the `two-pronged test' established by our decisions in Aguilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations."
462 U.S. at 238, 103 S.Ct. at 2332.
In Massachusetts v. Upton, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), the Court more explicitly stated:
"We think that the Supreme Judicial Court of Massachusetts misunderstood our decision in Gates. We did not merely refine or qualify the `two-pronged test.' We rejected it as hypertechnical and divorced from `the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)."
Massachusetts v. Upton, 466 U.S. at 732, 104 S.Ct. at 2087.
In Upton and Gates, the Court repudiated the excessively technical analysis formulated in Aguilar and, in essence, adopted the approach espoused by Justice Black in his dissent in Whiteley v. Warden, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).
Justice Black proposed a common-sense approach that stressed guarding against the real life probabilities of an infringement on individual rights, not the technical possibility that individual rights might be infringed in some hypothetical situation divorced from reality. I believe that such a common-sense approach is called for in the present case.
The proper test for determining the required reasonable suspicion for an investigatory stop is the totality-of-the-circumstances test. United States v. Cortez, 449 U.S. 411, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); United States v. Sokolow, ___ U.S. ___, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
In Sokolow, the Court applied the "totality of the circumstances" test to an investigative stop in a factual setting similar to that presented here. In that case the Court said:
"The Court of Appeals held that the DEA agents seized respondent when they grabbed him by the arm and moved him back onto the sidewalk. 831 F.2d, at 1416. The Government does not challenge that conclusion, and we assume without decidingthat a stop occurred here. Our decision, then, turns on whether the agents had a reasonable suspicion that respondent was engaged in wrongdoing when they encountered him on the sidewalk. In Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884-85, 20 L.Ed.2d 889 (1968), we held that the police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity `may be afoot,' even if the officer lacks probable cause."
___ U.S. at ___, 109 S.Ct. at 1585.
It appears to me that under this test, the police were justified in stopping the defendant's car in the present case. The anonymous caller in this case specified the defendant's place of departure, the car she would be driving, and her destination. All of these facts were corroborated. During the course of the investigation, the police advised the suspect of the substance of the tip. It appears from the State's statement of facts that the defendant consented to the search of her car and willingly gave the *1084 police the combination to her attache case which allegedly contained the contraband.
As the Supreme Court said in Sokolow:
"We do do not agree with respondent that our analysis is somehow changed by the agents' belief that his behavior was consistent with one of the DEA's `drug courier profiles.' Brief for Respondent 14-21. A court sitting to determine the existence of reasonable suspicion must require the agent to articulate the factors leading to that conclusion, but the fact that these factors may be set forth in a `profile' does not somehow detract from their evidentiary significance as seen by a trained agent.
"Respondent also contends that the agents were obligated to use the least intrusive means available to verify or dispel their suspicions that he was smuggling narcotics. Id., at 12-13, 21-23. In respondent's view, the agents should have simply approached and spoken with him, rather than forcibly detaining him. He points to the statement in Florida v. Royer, 460 U.S. [491], at 500, 103 S.Ct. [1319], at 1325-26 [75 L.Ed.2d 229] (opinion of White, J.), that `the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time.' That statement, however, was directed at the length of the investigative stop, not at whether the police had a less intrusive means to verify their suspicions before stopping Royer. [An] officer's decision to stop a suspect does not turn on the availability of less intrusive investigatory techniques. Such a rule would unduly hamper the police's ability to make swift on-the-spot decisions ... and it would require courts to `indulge in "unrealistic second-guessing."' [United States v.] Montoya de Hernandez, 473 U.S. [531], at 542, 105 S.Ct. [3304], at 3311, [87 L.Ed.2d 381] quoting United States v. Sharpe, 470 U.S. 675, 686, 687, 105 S.Ct. 1568, 1576, 84 L.Ed.2d 605 (1985)."
___ U.S. at ___, 109 S.Ct. at 1587.
Because I believe the Court of Criminal Appeals engaged in "unrealistic second-guessing" here, I would grant the writ; therefore, I dissent.
STEAGALL, J., concurs.
NOTES
[1] United States v. Sokolow, ___ U.S. ___, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989).
[2] Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) began when police received an anonymous letter that described drug activity by the Gates couple, the letter concluding," I guarantee if you watch them carefully you will make a big catch." The Supreme Court of the United States, commenting on the requirement of the credibility of anonymous informers stated:

"[T]he direction taken by decisions following Spinelli poorly serves `[t]he most basic function of any government': `to provide for the security of the individual and of his property.' Miranda v. Arizona, 384 U.S. 436, 539 [86 S.Ct. 1602, 1661, 16 L.Ed.2d 694] (1966) (White, J., dissenting). The strictures that inevitably accompany the `two-pronged test' cannot avoid seriously impeding the task of law enforcement, see, e.g., n. 9, supra. If, as the Illinois Supreme Court apparently thought, that test must be rigorously applied in every case, anonymous tips would be of greatly diminished value in police work. Ordinary citizens, like ordinary witnesses, see Advisory Committee's Notes on Fed.Rule Evid. 701, 28 U.S.C.App., p. 570, generally do not provide extensive recitations of the basis of their everyday observations. Likewise, as the Illinois Supreme Court observed in this case, the veracity of persons supplying anonymous tips is by hypothesis largely unknown, and unknowable. As a result, anonymous tips seldom could survive a rigorous application of either of the Spinelli prongs. Yet, such tips, particularly when supplemented by independent police investigation, frequently contribute to the solution of otherwise `perfect crimes.' While a conscientious assessment of the basis for crediting such tips is required by the Fourth Amendment, a standard that leaves virtually no place for anonymous citizen informants is not.
"For all these reasons, we conclude that it is wiser to abandon the `two-pronged test' established by our decision in Aguilar and Spinelli. In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. See Jones v. United States, [362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960) ]; United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949). The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclud[ing]' that probable cause existed. Jones v. United States, 362 U.S., at 271 [80 S.Ct. at 736]. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from Aguilar and Spinelli."
462 U.S. at 237-39, 103 S.Ct. at 2331-32. (emphasis added.)
I recognize that some legal scholars have criticized Illinois v. Gates and said that it "exalts anonymity to heretofore unheard of respectability," Loewy, Protecting Citizens from Cops and Crooks: An Assessment of the Supreme Court's Interpretation of the Fourth Amendment During the 1982 Term, 62 N.C.L.Rev. 329, 345 (1984), but I find no relaxation of the Gates rule by the Supreme Court of the United States. In fact, United States v. Sokolow, ___ U.S. ___, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), in my opinion, reaffirms it.
[3] Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).
[4] A phrase I borrow from Upton.
[5] In its opinion, the Court of Criminal Appeals quotes extensively from 3 W. LaFave, Search and Seizure § 9.3(e) (2d ed. 1987), in which LaFave states that State v. Hobson, 95 Idaho 920, 523 P.2d 523 (1974) "is in error," and that the dissenting opinion in that case correctly states the law.
[6] LaFave favorably quotes this portion of the dissenting opinion in State v. Hobson, 95 Idaho 920, 523 P.2d 523 (1974):

"`On the basis of the majority opinion anyone can call the police, describe an automobile and its owner and allege possession of illegal drugs with the result that the described person will be pulled over, required to identify himself, interrogated about criminal behavior, and his automobile subjected to a visual search.'"
Of course, it is possible that someone could try to frame another person. It is also possible that numerous other factual settings could be envisioned, but the rule is not one of "possibilities" but one of "probabilities."